(No. 4958.  Decided July 27, 1905.)

A. L. Smith et al., *Respondents*, v. St. Paul, Minneapolis & Manitoba Railway Company, *Appellant*.[1]

EMINENT DOMAIN—DAMAGING OF PROPERTY—RAILROADS—CONSTRUCTION — OPERATION — NOISES, FUMES, SMOKE—INCIDENTAL DAMAGES—DAMAGE ABSQUE INJURIA. The word "damaged" as used in Const. art. 1, § 16, providing that private property shall not be damaged or taken without just compensation having been first made, was not intended to give a right of action where the injuries to property would otherwise have been *damnum absque injuria*, in an action against a natural person or private corporation; hence damage can be recovered for the operation of a railroad on its own nearby property only for such injurious physical effects as the jarring of the earth on the plaintiff's lots, casting soot and cinders thereon, or the emission of smoke physically affecting the property, and not for the usual noises and the emission of fumes, smoke or odors necessarily incident to the operation of trains, not resulting from negligence; these being regarded as *damnum absque injuria*.

SAME—ACCESSIBILITY OF CROSS-STREETS. Excavations by a railroad company, through cross-streets in the neighborhood, affecting the accessibility of the streets, do not constitute an injury to plaintiff's property for which he is entitled to damages, where his property does not abut upon the street, although he may use said streets more than any one else, since his injury differs from that of the public only in degree and not in character.

Appeal from a judgment of the superior court for Spokane county, Belt, J., entered June 29, 1903, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages to property by the construction and operation of a railroad.  Reversed.

*M. J. Gordon* and *C. A. Murray,* for appellant.

*Barnes & Latimer, S. C. Hyde* and *W. F. Townsend,* for respondents.

Root, J.—Respondents are the owners of lots 7 and 8, in block 6, of Ide & Kauffman's Addition to Spokane, which lots face upon the north side of Bridge avenue, a public street

[1]Reported in 81 Pac. 840.

sixty feet in width, having an east and west course. Said lots extend from said avenue northerly one hundred and seventeen feet along the line of Cannon street, which is sixty feet wide, running north and south. Prior to this action appellant had constructed and was operating a railway line, which, for a distance of about a quarter of a mile to the east, and for a half mile to the west, of respondent's property, paralleled said Bridge avenue at a distance of sixty-three and one-half feet to the south thereof. In front of respondents' property, and for some distance on either side, there is an excavation or cut of some twelve feet in depth, in which appellant's railway track is laid. The nearest rail is one hundred and twenty-three and one-half feet distant from the nearest portion of respondents' property. Respondents allege that the ringing of bells, the sounding of whistles, and other noise incidental to the running of trains upon this railway track, together with the smoke, fumes, soot, and cinders from the locomotives, and the jarring of the earth by passing trains and the excavations in cross-streets, have occasioned serious damage to their property and have materially reduced the market value thereof. They brought this action to recover said damages, basing their right of action upon that portion of § 16, art. 1, of the state constitution, which reads as follows:

"No private property shall be taken or damaged for public or private use without just compensation having been first made or paid into court for the owner."

They recovered judgment in the lower court, from which appeal is taken to this court.

It is not contended that the noises or other annoyances complained of are other than those which are naturally and necessarily incident to the proper operation of the railway, and it is not contended that any or all of these things constitute a nuisance. But it is urged that their property is "damaged," within the meaning of that term as used in the constitution. This railway is built upon land purchased or

condemned by the railway company, except where it crosses
public streets. No street is crossed at any point adjacent to
respondents' property. It is contended, however, that, inas-
much as appellant has made an excavation through the streets,
which has impaired the accessibility of said streets, near re-
spondents' property, they are injured thereby.

Appellant contends that all of these injuries, complained
of by respondents, are occasioned by results which are natur-
ally and necessarily incident to the operation of the road,
which is a legitimate business, and that they do not consti-
tute damages such as are contemplated by the constitutional
provision aforesaid. It is urged that, in so far as they are
injurious to respondents at all, they are *damnum absque
injuria.* Appellant maintains that the constitutional pro-
vision, *supra,* and similar provisions found in various state
constitutions, were inserted, not with the intention of giving
a cause of action for every injury which might occur, but
to place public corporations upon a plane with private cor-
porations and individuals, and to make such public corpora-
tions liable under the same circumstances that would hold
persons and private corporations liable.

It seems to be conceded that, prior to the adoption of these
constitutional provisions containing the word "damaged,"
or equivalent expressions, the word "taken" as found in most
of the constitutions was not construed to give any right of
action against states, counties, and cities, public or quasi
public corporations, where no tangible property was phy-
sically taken, even though the use of said property was ma-
terially interfered with and its value depreciated. Several
of the older states amended their constitutions by adding the
word "damaged," and a number of the new states placed said
word in their organic law at the time of its original adoption.
Our attention has been called to this, or a similar provision,
in the consitutions of the following states: California, Colo-
rado, Georgia, Illinois, Missouri, Nebraska, Pennsylvania,
Texas, and West Virginia; and we believe the same, or similar

provisions, are found in the constitutions of Arkansas, Kentucky, Montana, and the Dakotas.

In California, Georgia, Illinois, Missouri, Pennsylvania, and West Virginia, the contention of appellant appears to be upheld, and damages seem not to be allowed where the same are consequential or incidental merely to the carrying on of a legitimate business. In Nebraska and Texas the courts evidently hold the other way. There are many cases holding that any obstruction to a public street in front of, or adjacent to, real property entitles the owner of said property to a right of recovery against the one causing said obstructions, even though they be used as a railway, viaduct, or for other legitimate purposes. But the weight of authority appears to be against the right of a property owner recovering for damages occasioned by the legitimate use by another of his own property, so long as said damages are not such as physically affect his property, or some right appurtenant thereto. This was the rule of law prior to the adoption of these constitutional provisions including the word "damaged," and there seems to be sound reason for the contention that this term was placed in new and amended constitutions so that public and quasi-public corporations should be held for damages upon the same grounds as others.

Such seems to have been the view taken by this court in the case of *Brown v. Seattle*, 5 Wash. 35, 31 Pac. 313, 32 Pac. 214, 18 L. R. A. 161, where the following language was used:

"The earlier constitutions of the several states in the Union contained, with but few exceptions, a provision that private property should not be taken for public use without just compensation. The constitution of the United States contains substantially the same provision, which was applicable to the territory. Under these provisions, however, owing to the interpretation put upon the word 'taken' by the courts of the several states, with the exception of the courts of Ohio, great and manifest injury was constantly done by the states, counties and cities to the private citizen without any legal

means of reimbursement. The theory was that wherever the state, through its legislative acts, authorized any of its agents to make public improvements, so long as these agents carried on their work within the scope of their authority, and without negligence, they were liable to no one, whatever damages might accrue. A citizen was thus left without protection in all that large class of cases where, through some act done for the public benefit, or for a use public or *quasi* public, although no part of his tangible property was physically taken, the use or value of his property was palpably impaired, or was stripped of incidents comprised within the conception of complete property rights which brought to those rights quite as much value as the mere possession of the property."

In construing a word or expression of a statute or constitution susceptible of two or more meanings, the court will give that interpretation most in accord with the manifest purpose of the statute or constitutional provision. Where the word or expression constitutes an amendment, the court will consider the old law, the mischief sought to be corrected, and the remedy. With all these in mind, the court will give the new term or language such construction as will effectuate the evident intention and purpose of the makers. Under the constitutions providing compensation for the taking of property, it was almost uniformly held that public corporations might in different ways greatly injure the property and property rights of others, but could not be held in damages unless there was an actual taking of some portion. The word "damaged" being employed to give relief to those thus affected by the actions of public or quasi-public corporations, it is argued that it should not be assumed that said word was intended to have any other and wider meaning than it then possessed as a well understood legal term. Ordinarily one may use his own property in any legitimate manner he chooses; and, prior to the employment of the word "damaged" in state constitutions, no such property owner was liable to any one else for any injuries consequent upon, or incidental to, such lawful use of his own property.

Applying to the constitutional provision in question the usual tests and rules, and having due consideration for the weight of judicial opinion, as we find it expressed by the courts that have passed upon this question, we are disposed to hold that the word "damaged," as used in our constitution does not give a right of action in a case where the injuries would have been, in the absence of said word, *damnum absque injuria* in an action against a natural person or private corporation.

It would seem to be only reasonable to suppose that persons acquiring property in a thickly settled community must have anticipated the use of neighboring property in a manner not always to be agreeable and pleasant. A person buying property in a growing city must be presumed to have done so for the benefits to come to him by reason of being a property owner in such a city. The presence and operation of railroads are necessarily attendant upon the growth and prosperity of such a city as Spokane. Probably respondents would not have become property owners therein had it not been for the present and prospective railroad facilities of the city. As such purchasers and owners, they knew that more railways would be required as the city grew and became more important. The very growth and development which made city property, as a whole, more valuable and opportunities for business prosperity greater, required the building and operation of more railway lines. No one could buy property in such a growing city without realizing that this would be a natural and necessary result. Where such new lines might be constructed, a person could not foretell. But he would know that they must be near other property, and that their operation, however legitimate and careful, must entail consequential injuries upon the owners of such nearby property. Electing to purchase property in such a community where his property might profit by the industrial and commercial activities of others, it is but just to hold that, with the advantages, he should also accept the burdens necessarily inci-

dental thereto. If one resides on a parcel of city property, his neighbors on three sides may lawfully erect high buildings for legitimate purposes which will entirely shut off access, light, and air from those three sides. This greatly reduces the value of his home. It makes it unpleasant and undesirable, increases his insurance rates, subjects him to unpleasant noises and disagreeable sights. But so long as these neighbors use their property lawfully and avoid creating a nuisance, he has no right of action against them. So it is when nearby property is used in a proper manner for railway purposes. So long as such use does not affect the property of others in a physical manner to its detriment, the consequential injuries do not come within the meaning of the word "damaged," as used in the constitution—providing, of course, that a nuisance is not created.

In the case at bar, appellant is operating its railway upon its own property except where the same crosses the public streets. No nuisance is alleged. Complaint is made of the ringing of bells, sounding of whistles, rumbling of cars, jarring of the earth, and the casting of cinders and soot upon, and smoke and fumes across, respondents' premises. They claim also to be injured by reason of the uncovered cuts through the cross-streets, and the wooden bridges over other of said cuts, which make the use of such streets more difficult.

The jarring of the earth of respondents' lots and the casting of soot and cinders thereupon, and the emission of smoke physically injuring property, are injurious physical effects to the *corpus* of respondents' property, which, we think, come within the scope of the term "damaged," as used in the constitutional provision. If a railroad company cannot carry on its business upon its own property without necessarily disturbing the physical conditions of other property, it is evident that such company has not acquired sufficient property for the conduct of its business, and it should be required to pay such damages as the actual physical disturbance of

the neighboring property entails thereupon. But the ringing of bells, sounding of whistles, rumbling of trains, and other usual noises, and the emission of smoke, gases, fumes, and odors are necessarily incidental to the proper operation of the road, and when not resulting from negligence, are such consequential injuries as must be held to have been anticipated by any one acquiring property in or about such a city, and are regarded as *damnum absque injuria.*

It is urged that the excavations made through the cross-streets in respondents' neighborhood constituted an injury for which they are entitled to damages. We think not. If the railroad was constructed in the public street adjacent to respondents' lots, they would be entitled to recover whatever damages were occasioned thereby. This is upon the theory that every owner of property bordering upon the street has a right to access, light, and air therefrom, which right is an appurtenant to the land, and any physical impairment of that right is regarded as actionable. Such an injury is one peculiar to the land owner, and not shared in kind by others. But where the injury complained of is an obstruction, not adjacent to the land of the person in question, but to a street in the neighborhood which he uses, or might use, in common with the public in general, he has no right of action as an owner of injured property. That he may use the street more often than most or all others, makes a difference only in degree and not in character, and does not entitle him to damages by reason of injury to his property.

The questions involved herein have been carefully considered and passed upon by many courts; and in view of the importance of said questions, we feel that we may very properly set forth extracts from several of the opinions of these courts. In the case of *Brown v. Seattle, supra,* this court used the following language:

"The makers of the Illinois constitution used the word in that instrument for some purpose. Other states changed their constitutions for substantially the same purpose. They

took the new phrase subject to the general rule of construction, that the adoption of constitutional or statutory language by one state from another adopts to some extent, at least, the construction put upon the borrowed language by the courts of the state from which it came. After almost twenty years of discussion and decision in Illinois and other states, we put the words 'taken or damaged' into our constitution, and they must have their effect."

In view of the principle of construction thus recognized, it becomes important to see what the courts of Illinois hold upon this proposition. In the case of *Aldrich v. Metropolitan etc. R. Co.*, 195 Ill. 456, 63 N. E. 155, 57 L. R. A. 237, the supreme court of that state quotes approvingly from one of its former decisions, as follows:

"The question then recurs, what additional class of cases did the framers of the new constitution intend to provide for which are not embraced in the old? While it is clear that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution, yet we think it equally clear that it was not intended to reach every possible injury that might be occasioned by a public improvement. There are certain injuries which are necessarily incident to the ownership of property in towns or cities which directly impair the value of private property, for which the law does not and never has afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property, yet that is clearly a case of *damnum absque injuria.* So as to an obstruction in a public street. If it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject the common law afforded redress in all

such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislati enactment, an action would lie by the common law."

And then makes the following observations:

"That case, ever since its decision, has been regarded as laying down the proper rule on the subject, and is, we think, conclusive of the case at bar. Here there has been no direct physical disturbance of any right, public or private, which the plaintiff enjoys in connection with her property and which gives to it an additional value, whereby she has sustained a special damage in excess of that sustained by the public generally. The damages sued for are of the same kind and character as those sustained by the public generally in the ownership of property, which property may have been lessened in value by the construction and operation of the road. Noise, the obstruction of light and of view, are necessary incidents of the construction and operation of such roads, and if every property owner could recover in all such cases, the making of public improvements would become practically impossible. This road is not constructed along the street in front of the plaintiff's property, thus injuring or destroying a public right which she enjoyed in connection with her property, but, as before said, it is constructed on its own land or right of way. Therefore, what the rights of an abutter would be in such a case it is not necessary to consider. In *Illinois Central Railroad Co. v. Grabill,* 50 Ill. 241, in speaking of the annoyances of running engines, the escape of steam, etc., near the plaintiff's premises, this court said (p. 244): 'Such consequences of the construction and use of railroads must be borne by all living near them, without complaint and without hope of redress, for they are inseparable from the purposes and objects of such structures, but that a recovery can and should be had for such damages as arise out of the careless and negligent acts of a railroad company in regard to any usual and necessary appurtenance to their road cannot be denied.' *(City of Chicago v. Union Stock Yards,* 164 Ill. 224.) A railroad constructed and operated by authority of law cannot be a nuisance, and there was no right of action at common law for the depreciation in value of property so caused. The company is liable for negligent

or willful injury, as others are, but not for doing the things which the law authorizes it to do. Nor can we agree that the constitution of 1870 gives, or was intended to give, a remedy for all incidental losses, or for the depreciation of the value of property, caused by the construction and operation of railroads in the vicinity, but as said in the *Rigney case,* it was intended only to restore a remedy which existed at common law but which had been denied by legislation and the constitution of 1848."

In the recent case of *Bennett v. Long Island R. Co.* (N. Y.), 74 N. E. 418, the court of appeals of New York adopts the language of the appellate division of the supreme court as follows:

"The rumble of trains, the clanging of bells, the shriek of whistles, the blowing off of steam, the discordant squeak of wheels in going around the curves, the emission of smoke, soot, and cinders, all of which accompany the operation of steam cars, are undoubtedly nuisances to the neighboring dwellings in the popular sense, but, as they are necessarily incident to the maintenance of the road, they do not constitute nuisances in the legal sense, but are regarded as protected by the legislative authority which created the corporation and legalized its corporate operations. Nor does the legal nature of such annoyances change as traffic increases them in volume and extent."

And, after referring to certain peculiarities of the case, the court of appeals makes the following statement:

"But underlying even these cogent considerations there is the basic distinction that when the legislature authorizes the operation of a steam surface railroad it impliedly sanctions and legalizes those inconveniences and annoyances to others which are inseparable from the proper conduct of such an enterprise."

In the case of *Pennsylvania R. Co. v. Marchant,* 119 Pa. St. 541, 13 Atl. 690, 4 Am. St. 659, the supreme court, in an elaborate and instructive opinion, says:

"No principle of law is better settled than that a man has the right to the lawful use and enjoyment of his own prop-

erty, and that if in the enjoyment of such right, without negligence or malice, an inconvenience or loss occurs to his neighbor, it is *damnum absque injuria.* This must be so, or every man would be at the mercy of his neighbor in the use and enjoyment of his own. . . . The necessities of a railroad company and the character of its business compel it to seek the heart of a great city. This is as much for the convenience of the public as for its own. Hence the transportation of passengers and freight as near to the center of a town as possible, is in the direct line of its duty, whether that duty be performed by a corporation or individual. It is a part of the lawful use and enjoyment of property, and, where it is done without negligence, entails no legal liability therefor. . . . We understand the word 'injury' or (injured), as used in the constitution, to mean such a legal wrong as would be the subject of an action for damages at common law. For such injuries, both corporations and individuals now stand upon the same plane of responsibility. That I am correct in the meaning we attach to the word 'injured,' appears abundantly by our own authorities. . . . The language of the constitution is not equivocal and is entirely free from ambiguity. The framers of that instrument understood the meaning of words, and many of them were among the ablest lawyers in the state. Two of them occupy seats upon this bench. Hence, when they extended the protection of the constitution to persons whose property should be injured or destroyed by corporations in the construction or enlargement of their works, we must presume they meant just what they said; that they intended to give a remedy merely for legal wrongs, and not for such injuries as were *damnum absque injuria.* Among the latter class of injuries are those which result from the use and enjoyment of a man's own property in a lawful manner, without negligence and without malice. Such injuries have never been actionable since the foundation of the world." .

The same court, in *Pennsylvania R. Co. v. Lippincott,* 116 Pa. St. 472, 9 Atl. 871, 2 Am. St. 618, said:

"We agree, indeed, that if the ordinary and proper use of the railway is to be regarded as an element of damage, as to a certain extent it is in the case of a condemnation, the rule stated is the correct one; but as this rule is not one of common-

law but of statute, it cannot apply to the case now being considered: *Railroad Co. v. Yeiser*, 8 Penn. St. 366. Unless, therefore, the case can be brought within some statute, the rule by which damages are measured by advantages and disadvantages ought not to have been adopted; for, as was said, in the case cited, per Mr. Justice Rogers, 'it is a principle well settled by many adjudicated cases, that an action does not lie for a reasonable use of one's right though it be to the injury of another. For the lawful use of his own property, a party is not answerable in damages, unless on proof of negligence.' How, then, we ask, can a lawful erection by the Pennsylvania Railroad Company, on its own ground, be the subject of damage to the adjoining land-owners? And why may it not as put by the defendant's first point, operate and use, in a lawful manner, its Filbert street branch without subjecting itself to an action for damage? It seems to be very clear that a private person could do with impunity, on his own property, just what the railroad company has done. He might build a house, and thus shut out his neighbor's view, light and air; he might build an embankment, or run a road on or along his own line, and be liable for nothing as long as he used his house, embankment or road in a lawful manner, although in either case an injury may have been done to the adjacent property. Who does not know that even in the country no householder escapes injury and annoyance from clouds of dust raised in dry weather by the passage of teams over the common roads? And in the cities this grievance is further aggravated by the intolerable noise occasioned by the use of stone pavements. Nevertheless, we have yet to hear of a case where one lawfully using such road or street was held liable for the injury thus occasioned. When a company takes, by its right of eminent domain, part of a tract of land, and the damage to the balance is to be measured by the advantage over the disadvantage resulting from the company's works, in such case, as we held, in *Searle v. The Railroad Co.*, 33 Penn. St. 57, contingent and even imaginary damages may be considered by way of offset to the alleged advantages. But whilst this is so, such damages cannot be regarded as a substantive claim."

The supreme court of Georgia, in an elaborate opinion reviewing many authorities and bearing evidence of careful

consideration, among other things, in the case of *Austin v. Augusta etc. R. Co.*, 108 Ga. 671, 34 S. E. 852, 47 L. R. A. 755, says:

"In this sense, and as a well-defined law term, it was used in the constitution to give the owner of private property compensation for the actionable wrong whereby his property had been damnified, but it did not give him compensation for depreciation in value caused by any legal act; since in law such an act was innocent, and therefore harmless, or, if not actually harmless, '*damnum absque injuria.*' There is nothing in the language of the constitution, or in the debates or in the proceedings of the convention, which shows any intent to enlarge its definition, or to make it mean more than it had always meant as a law term. Nor was this sentence framed with a view of changing the substantive law of damages, or of making that actionable which before that time had been non-actionable. Rather, the purpose was, to make the law of damages uniform, so that a plaintiff could recover against a city or railroad under the same circumstances that would have authorized a recovery against those not armed and protected by the power of eminent domain. . . . Properly conducted, decently appointed, and orderly managed stores, shops, factories, and business houses, erected in close proximity to residential quarters, frequently cause great depreciation in values; in the popular sense they cause damage, but in such cases the annoyances, the inconveniences occasioning the loss in value, are not actionable, because they arise from lawful uses. The owners of these establishments are as much entitled to the use and enjoyment of their property as is the owner of the residence property reduced in value by their presence. The first occupier of land does not acquire the right to prevent his neighbor from erecting walls, digging excavations, erecting buildings, or engaging in manufacturing or mercantile business thereon, no matter how seriously such acts may depreciate the market price of adjoining property. If the acts complained of do not amount to a nuisance, there is neither legal nor moral wrong done to the plaintiff. . . . For a physical invasion or wrongful interference with property or its appurtenances, resulting in damage, the plaintiff may recover. Without some wrongful act on the

part of the defendant she cannot recover, even though there is deterioration in the value of her property."

As bearing upon the claim of damage on account of excavating across neighboring streets, the following three cases show the trend of judicial decision:

*Van De Vere v. Kansas City,* 107 Mo. 83, 17 S. W. 695, 28 Am. St. 396, wherein the supreme court of Missouri said:

"What we do say is this, that he must show that the property itself, or some right or easement connected therewith, is directly affected, and that it is specially affected. . . . His property is not specially affected. If the plaintiff is entitled to damages in this case, then compensation must be allowed for any depreciation in the market value of property, arising from the erection of a court house, jail, or other public building. The text-writers cited say such cases are not within the amendment, and to this we agree."

The case of *Brown v. Board of Supervisors,* 124 Cal. 274, 57 Pac. 82, where the supreme court of California spoke as follows:

"The property which an abutting owner has in the street in front of his land is the right of access and of light and air, and for an infringement of these rights he is entitled to compensation. This right is peculiar and individual to the abutting owner, differing from the right of passing to and fro upon the street, which he enjoys in common with the public, and any infringement thereof gives him a right of action. . . . The provision in the constitution invoked by them was inserted therein to provide for instances in which property was not taken from the possession of the owner, or into physical occupancy by the public, and applies only to such damages as may be recoverable under established rules of law. The damage which the appellants may sustain by reason of a diminution in value of their lands is not damage for which they are entitled to compensation."

The opinion in the case of *Gilbert v. Greeley etc. R. Co.,* 13 Colo. 501, 22 Pac. 814, contains an able discussion of the subject, from which we present the following extracts:

24—39 WASH.

"The *corpus* of his property is not affected by any physical contact with the railroad tracks, nor is any street or alley, so far as the same borders on his premises, in any way interfered with. . . . One traveler has no more legal ground of complaint on account of an obstruction in the public highway than others, unless he be entitled to use the highway at the point of such obstruction for a different purpose than other people, or has suffered some special injury therefrom. The fact that he may be more frequently inconvenienced thereby does not give a cause of action. . . . His damage, therefore, may or may not differ in degree. It certainly does not differ in kind from that of the general public. . . . The constitution of Colorado, article 2, section 15, provides 'that private property shall not be taken or damaged for public or private use without just compensation.' . . . Private property must be taken, or private property must be damaged, before a cause of action arises. The damage must be to the property, or its appurtenances, or it must affect some right or interest which the owner enjoys in connection with the property, and which is not shared with or enjoyed by the public generally. . . . While it is admitted that plaintiff's property is rendered less valuable by reason of such obstruction, yet, to bring the case within the meaning of the constitution, it must also appear that he has some special private property, right or interest, as a private right of way or user, in Twelfth street, at the point of obstruction, other or different from the right or interest of the general public, and that such property, right or interest of plaintiff has been damaged for public use. Notwithstanding the broad terms of our constitution, and the unqualified expressions of certain judicial opinions, we are not prepared to say that whenever a depreciation in private property is caused by some public or private improvement the owner of the property thus depreciated may recover compensation against the party making such improvement. It is probable that, in consequence of every improvement resulting from new inventions or discoveries, the private property, rights or interests of some person or persons have been damaged or injuriously affected. In many instances the construction and operation of railroads have driven stage companies and post-chaises out of existence, and rendered the property invested therein, as well as such business, comparatively valueless. . . . It

may be susceptible of demonstration that every railroad company running its trains across a street or public highway causes damage or inconvenience in a greater or less degree to every traveler having occasion to use the street or highway at the point of such crossing, as well as to every person owning or occupying real estate anywhere in the vicinity of such crossing; and yet there is no remedy for such damage, under ordinary circumstances, for the reason that as a general rule no one has any special, private property or interest in the public highway other or different from the general public, and the damage thus suffered is common to all having occasion to use the street or highway. In such case, therefore, private property cannot be said to be taken or damaged for public use, within the sense or meaning of the constitution. It is only when some specific private property, or some right or interest therein or incident thereto, peculiar to the owner, is taken or damaged for public or private use that the constitution guarantees compensation therefor. *City of Denver v. Bayer,* 7 Colo. 113; *Railroad Co. v. Nestor,* 10 Colo. 403; *Whitsett v. Railroad Co.,* 10 Colo. 243; *Rude v. City of St. Louis,* 93 Mo. 408; *Morgan v. Railway Co.,* 64 Iowa, 589; *Shaubut v. Railroad Co.,* 21 Minn. 502."

· Lewis, Eminent Domain (2d ed.), § 236, says:

"Every owner takes the chance of having the value of his property enhanced or diminished by the use made of surrounding property, and the character of the improvements put upon it. He has no cause of complaint on account of the nature of such uses or improvements, unless they amount in law to a nuisance. The grievances which lead to the insertion of the words 'damaged' or 'injured' in recent constitutions, did not consist in the fact that such damages as have just been referred to went without redress, but in the fact that, under the restricted interpretation put upon the word 'taken,' private property might be subjected to physical injuries, and valuable rights appurtenant thereto or connected therewith, might be impaired or destroyed for public use without compensation. These words were not inserted for the purpose of preventing the public from doing what every private individual may do without liability to his neighbor. They were not intended to confer a right of action for a use of

property by the public, which a private individual might make without legislative authority."

In addition to the foregoing authorities, the following shed light upon the questions under consideration, viz.: *Jordan v. Benwood,* 42 W. Va. 312, 26 S. E. 266, 57 Am. St. 859, 36 L. R. A. 519; *Adams v. Chicago etc. R. Co.,* 39 Minn. 286, 39 N. W. 629, 12 Am. St. 644, 1 L. R. A. 493; *Carroll v. Wisconsin Cent. R. Co.,* 40 Minn. 168, 41 N. W. 661; *Rinard v. Burlington etc. R. Co.,* 66 Iowa 440, 23 N. W. 914; *Dunsmore v. Central Iowa R. Co.,* 72 Iowa 182, 33 N. W. 456; *Hanlin v. Chicago etc. R. Co.,* 61 Wis. 515, 21 N. W. 623; *Presbey v. Old Colony etc. R. Co.,* 103 Mass. 1; *Columbia Delaware Bridge Co. v. Geisse,* 35 N. J. L. 558; *Beseman v. Pennsylvania R. Co.,* 50 N. J. L. 235, 13 Atl. 164; *Ricket v. Metropolitan R. Co.,* L. R. 2 H. L. 198; *Metropolitan Board of Works v. McCarthy,* L. R. 7 H. L. 256; *Fobes v. Rome etc. R. Co.,* 121 N. Y. 505, 24 N. E. 919, 8 L. R. A. 453; *Decker v. Evansville etc. R. Co.,* 133 Ind. 493, 33 N. E. 349; *Werges v. St. Louis etc. R. Co.,* 35 La. Ann. 641.

To sustain respondents' contention that each and every of the matters complained of constitutes a cause of action, would be to open the door to endless litigation over damages remote, vague, indefinite, and uncertain, and against corporations and persons engaged in all lines of industrial activities. We believe this would be decidedly obnoxious to sound public policy, and cannot believe the framers of the constitution, or the people in adopting it, ever intended such results.

The learned trial judge having made certain rulings inconsistent with the conclusion herein reached, and to the prejudice of appellant, the judgment of the superior court is reversed and the case remanded for a new trial.

Mount, C. J., Crow, Rudkin, Fullerton, and Hadley, JJ., concur.