## FRED RIECK v. RUDOLPH SCHAMANSKI.[1]

January 26, 1912.

Nos. 17,416—(175).

**Injunction — draining surface water through a watershed — what is reasonable.**

Action to enjoin the defendant from discharging surface waters from his own land, by means of a ditch cut through a natural watershed on his own land, upon the land of the plaintiff, thereby unreasonably and unnecessarily damaging the plaintiff. *Held:*

1. A landowner may rid his land, for any legitimate purpose, of surface waters, even to the injury of the land of another, but in so doing he must use all reasonable means to avoid unnecessary injury to the land of others.

2. What is reasonable in such cases depends on the special facts of each particular case. The fact that the artificial drainage is not along the natural course of drainage, but through a watershed, is an important, but not a controlling, factor under all circumstances in determining the question of reasonable use.

3. The findings of fact herein do not sustain the conclusion of law to the effect that the plaintiff is entitled to the relief prayed for.

Action in the district court for Steele county to recover $1,000 damages to plaintiff's land caused by the construction of a ditch upon defendant's land and the consequent overflow of surface water

[1]Reported in 134 N. W. 228.

upon plaintiff's land. The case was tried before Buckham, J., who made findings of fact and as conclusion of law found that defendant was not entitled to relieve his land from the surface water naturally accumulating thereon by causing the same to flow upon and damage the land of plaintiff, or to turn the waters out of their natural course across the divide separating the land of the parties, even though the ditch was entirely upon his own land and the damage resulting to plaintiff less than the benefit which would accrue to himself; that plaintiff was entitled to have defendant enjoined from maintaining a certain tile drain opening onto plaintiff's land and for $50 damages. From an order, Childress, J., denying defendant's motion for a new trial, he appealed. Reversed and new trial granted.

*J. A. & A. W. Sawyer,* for appellant.

*W. A. Sperry,* for respondent.

START, C. J.

Appeal from an order of the district court of the county of Steele denying the defendant's motion for a new trial. The complaint alleged in substance that the plaintiff and defendant were adjoining landowners; that the defendant unnecessarily and unreasonably dug a ditch through and upon his own land, which changed the natural course of the surface water on his own land, and caused it to flow upon the land of the plaintiff, thereby causing unnecessary and unreasonable damages. Judgment was asked for the amount of the damages sustained and for a perpetual injunction restraining the defendant from so discharging such waters upon plaintiff's land.

The answer of the defendant admitted the construction of the ditch on his own land, denied that it was unnecessarily or unreasonably done, and alleged that there was no other available method of draining the surface water from his own land.

The cause was tried by the court without a jury, and findings of fact and conclusions of law made, which, as amended, are, briefly stated, these:

The plaintiff owns and occupies a farm of eighty acres of land

adjoining on the west a farm of one hundred twenty acres owned and occupied by the defendant. Adjoining this last tract on the east, the plaintiff also owns a tract of eighty acres of land.

Commencing one hundred feet east of the line of defendant's farm, there is a ravine with high banks running in a general southwesterly direction through the north forty of plaintiff's farm, carrying the water that accumulates in a small watershed to the south forty thereof, where it spreads out into a small marsh of about six acres, thence across the highway on the west line of plaintiff's farm, and discharges on the land of one Olson into a so-called town ditch leading to the Le Sueur river. The fall from plaintiff's farm across the highway into the town ditch by way of Olson's land is very slight. The water flowing across plaintiff's farm through the ravine stands upon the slough on his south forty until the same either evaporates or slowly works its way across the highway into a ditch on Olson's land.

On defendant's farm there is a marsh of about twenty acres, which before the construction of the drain here in question was at all times covered with water, and had no natural outlet for the waters so accumulating thereon, except in times of high water, when the same flowed in a northeasterly direction and away from plaintiff's farm. This slough on defendant's farm was separated from the watershed on plaintiff's farm by a stretch of high, dry land, wholly on defendant's tract, one hundred fifty feet wide, which has at all times offered a natural and complete barrier and protection to the plaintiff's land from the waters accumulating in the slough on defendant's farm.

The defendant constructed a ten-inch tile drain through the high land separating his slough and the head of the watershed leading into and across plaintiff's land, one hundred fifty-two feet long and seven feet and ten inches deep at the highest point, and connected the drain with his slough by an open ditch, and thereby caused the waters of such slough to be discharged through the tile drain upon plaintiff's land, and to run down and cover his marsh and stand thereon, and thereby greatly injure plaintiff's pasture land, and

render the same to a large extènt incapable of use, and that by so doing he converted his own slough into ordinary pasture land.

The damages resulting to plaintiff's land up to the time of the commencement of this action amount to the sum of $50. The defendant threatens and intends to keep such drain open.

Prior to the construction of defendant's ditch, the water in his slough, when the same overflowed at times of heavy rains, found an outlet in a general northeasterly direction through a natural depression over and across the northwesterly corner of an eighty-acre tract, adjoining defendant's farm on the east, and owned by the plaintiff, and thence through a series of large, grassy sloughs, over the lands of one Hugh Murray and of other parties, to Cannon river. There was not, at any point between defendant's slough and Cannon river, any well-defined channel, with banks; hence to fully drain the water therefrom, and that accumulating along such natural depression, it would be necessary to construct a ditch beyond the land of Hugh Murray.

There is no evidence in the case from which the dimensions of such ditch could be in any manner determined. To drain defendant's slough in such northeasterly direction as far as the marsh on the lands of Hugh Murray, it would be necessary to open a ditch across a portion of plaintiff's east eighty, less than two feet deep at the highest point and not more than four hundred feet long. If such ditch were so constructed, it would be practicable to drain defendant's slough in the direction and through the channel which the overflow had always followed prior to the construction of defendant's ditch.

The court found as conclusions of law: "That the defendant was not entitled to relieve his own land from the surface water naturally accumulating thereon, by causing the same to flow upon and damage the land of the plaintiff, or to turn such waters out of their natural course across the divide separating plaintiff's land from defendant's, even though the ditch for doing the same was entirely

upon his own land and the damage resulting to plaintiff less than the benefit which would accrue to himself."

Judgment was accordingly directed for the plaintiff, enjoining the defendant from maintaining the ditch, and for $50 damages.

Thereupon the defendant made a motion to have the findings of fact amended in several particulars relative to the question whether the defendant by his tile drain ditch unnecessarily and unreasonably caused the surface waters from his own farm to flow upon that of the plaintiff to his damage. The motion as to such requested findings was denied. Thereupon the defendant made a motion for a new trial.

The defendant's assignments of error are not sufficient to raise all of the questions discussed in the brief, but they are sufficient to raise the questions whether the trial court erred in finding that it would be practicable to drain the defendant's farm by a ditch northeasterly through the land of the plaintiff and that of Hugh Murray, whether the court erred in not finding that the construction by defendant of the tile drain ditch was a reasonable use and improvement of his farm, and that it does not and will not unreasonably affect the plaintiff's land, and also whether the facts found sustain the conclusions of law.

The principal question presented for our decision is the last one. The others are important only in connection with a consideration of the facts found. In analyzing the findings of fact, and in considering the question whether they justify the conclusions of law, it is essential to keep in mind the issue made by the pleadings, namely: Whether the defendant unnecessarily and unreasonably, by the tile drain ditch upon his own land, changed the natural course of the *surface water* on his own land, and thereby caused it to flow upon plaintiff's farm, causing him unnecessary and unreasonable damages. This was the issue tendered by the complaint, from which it appears that the waters in question are surface waters proper.

According to the findings of fact, there is no natural outlet to this surface water to the northeast over the plaintiff's land, except for

that portion thereof due to heavy rains, which finds its way through a natural depression; but for the residue of such waters, after the *overflow* caused by heavy rains has ceased, there is no natural out-let in any direction for the surface waters resting on defendant's land. Such residue must remain on the defendant's land, rendering twenty acres thereof practically worthless, unless it can be drained in some direction by means of an artificial drain. The defendant constructed such a drain wholly on his own land, but through a natural watershed, and thereby turned the surface waters into the head of a ravine with high banks on his own land at a point one hundred feet from his west line, thereby reclaiming his twenty acres.

There is no finding that the defendant unnecessarily or unreasonably drained the surface waters into this ravine, or that he thereby unnecessarily and unreasonably damaged the plaintiff; the finding being that the damage to plaintiff was $50 from the time of the construction of the defendant's ditch to the commencement of this action, a period of more than two and one-half years.

Nor is there any finding whether it is feasible for the plaintiff to relieve his land from the surface waters coming down the ravine by opening a drain through his marsh. The evidence tended to show that it could readily be done, and at small expense.

There is no finding that it is practicable to drain the defendant's land by a ditch to the northeast. The finding in this respect is that, if the ditch were constructed, it would be practicable to drain defendant's land in that direction through the channel which the *over-flow* had followed; but it is also found that between defendant's slough and Cannon river there are no well-defined banks, and to fully drain defendant's land it would be necessary to construct a ditch beyond the land of Mr. Murray. How far such ditch must be constructed, or the dimensions or cost thereof, or whether it is practicable for the defendant to secure such a ditch, does not appear from the record. The evidence, however, is practically conclusive that the defendant was refused permission to construct the suggested ditch over the land of the plaintiff.

It is clear that it cannot be inferred as a matter of law from the facts found that the defendant unnecessarily and unreasonably constructed the ditch in question, or that he thereby unnecessarily and unreasonably damaged the defendant. It follows, then, that the conclusions of law are not justified by the findings of fact, unless the defendant had, as a matter of law, no right under any circumstances to drain his land by an artificial drain through a natural watershed on his own land, whereby the surface waters were carried upon the land of the plaintiff.

If such be the law, then the drainage in question was not a reasonable, but an unlawful, one, and the conclusions of law are supported by the findings of fact. It is quite evident, from the conclusions of law and the memorandum of the learned trial judge, that he was of the opinion that such was the law, and that he relied on the case of Erhard v. Wagner, 104 Minn. 258, 116 N. W. 577.

There are some statements in the opinion in that case which, construed without reference to its special facts, seemingly limit in all cases the right to drain surface waters by artificial drains to the line or course of natural drainage. If the opinion and decision in the Erhard case are to be construed as so declaring the law, then surface water which has no natural outlet, which is usually the case with surface water proper, cannot be drained under any circumstances. Such a construction of the Erhard case would be a repudiation of the rule of reasonable use laid down in the case of Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L.R.A. 632, and a long line of cases approving the rule.

The controlling facts in the Erhard case, as shown by the findings in connection with the evidence, were that the defendant could secure thorough drainage of his own land along the course of natural drainage by a shallow ditch one mile long, one-fourth of which was on his own land, and that the plaintiff could only relieve his own land from the burden of the surface waters, cast upon it by the act of the defendant by cutting through a high watershed, by initiating a drainage system which would carry such waters to a natural waterway. Upon a consideration of such facts this court held, in effect, that the

method adopted by the defendant for draining the surface waters from his own land was an unreasonable one, for he could not thereby compel the plaintiff to initiate a system of drainage upon and over his own land and that of others, when a similar course was open to the defendant by the deepening of a natural outlet.

It follows that the case relied upon does not modify the rule of reasonable use declared in Sheehan v. Flynn, supra, by requiring that the drainage of surface waters must under all circumstances follow the natural line or course of drainage.

The rule of reasonable use has been recognized, without modification, in several cases since the Erhard case, and the rule is now definitely settled that a landowner may rid his land, for any legitimate purpose, of surface waters, even to the injury of the land of another; but in doing so he must use all reasonable means to avoid unnecessary injury to the land of others—that is, he cannot, in draining his own land, cause unreasonable or unnecessary injury to the land below. What is reasonable in such cases depends upon the special facts of each particular case. The fact that the artificial drainage is not along the natural course of drainage, but through a watershed, is an important, but not a controlling, factor under all circumstances in determining the question of reasonable use. Peterson v. Lundquist, 106 Minn. 339, 119 N. W. 50; Howard v. Illinois Central R. Co. 114 Minn. 189, 130 N. W. 946.

It follows that the facts found by the trial court in this case do not sustain the conclusions of law, and that the order appealed from must be reversed, and a new trial granted.

So ordered.