IN RE TOWN DITCH NO. 1 TOWNSHIP OF
PLEASANT MOUND.
FRED W. LARSON AND ANOTHER v.
SAM BUSSE AND OTHERS.[1]

November 22, 1940.

Nos. 32,598, 32,599, 32,600, 32,601.

*Wilson & Blethen,* for appellants.
*V. V. Lindgren* and *Frundt & Morse,* for respondents.

STONE, JUSTICE.

The town board of Pleasant Mound in Blue Earth county
having established town ditch No. 1 (proceeding under 2
Mason Minn. St. 1927, § 6841, *et seq.*), Busse, Hayward,

[1]Reported in 295 N. W. 47.

Wojahn, and Parker, respondents here, appealed to the district court, where their respective claims for damages were tried to a jury. A verdict was directed against all of them except Busse. On his claim, for the special and limited damage hereinafter mentioned, the jury awarded him $100. Thereafter the landowners made separate motions for new trial. All were granted exclusively upon the ground of error in directing a verdict against Hayward, Wojahn, and Parker and by instruction limiting Busse's damages to those arising from the location on his land of an outlet and appurtenant catch basin. From the order granting the new trial, Larson, whose land was the only beneficiary of the drainage, and the township appeal.

Larson owns the southeast quarter and Busse the southwest quarter of section 36. The Hayward, Wojahn, and Parker lands lie to the north. Beginning some miles to the south and running northward through Busse's east 80, over the Hayward, Wojahn, and Parker lands, is a shallow but well defined watercourse. On Larson's land is what counsel call a "pothole" or slough with an area of some ten or more acres. What little but inadequate natural drainage it has is southward. Along the Larson-Busse boundary is a well defined ridge. So far as we can gather, it is partly on Larson's but mostly on Busse's land. The proposed ditch begins in the Larson slough and runs due west 700 feet, 285 of which are on the Busse property. The drain is of ten-inch tile, 17 feet underground at the highest point of the ridge on the Busse land.

At the outlet there is to be a small, shallow, concrete catch basin, calculated, we suppose, to prevent erosion. For the location and maintenance of this catch basin on his land, the jury awarded Busse $100 as damages, under instruction that he could recover on no other ground, that he was "not entitled to recover any damages for the water that is drained onto him by reason of the construction of this ditch."

Direction of the verdicts against three of the landowners and the indicated limitation of Busse's damages were put upon the familiar rule of Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632. It is that a landowner may dispose of surface water as best he can so long as he uses his own land so as not unnecessarily or unreasonably to injure his neighbor's. He is entitled so to get rid of it even though it is thereby conveyed upon the land of another if the latter is not thereby unreasonably injured.

That rule relates exclusively to private rights and activities. It imposes upon the lands of a lower owner a quasi servitude for the private purposes of the upper owner. It has no application to public drainage proceedings, which are justified only to serve public rather than private purposes. There must be showing, 2 Mason Minn. St. 1927, § 6842, of public benefit such as that to highways or the public health.

The question is not before us, so we are assuming that the ditch will be of public benefit. Otherwise this proceeding would not have been authorized under the statute. Had the latter not made public benefit a condition of such proceedings, it would have been unconstitutional under the rule of State ex rel. Schubert v. Board of Supervisors, 102 Minn. 442, 114 N. W. 244, 120 A. S. R. 640.

This being a public proceeding, no land can be taken or damaged, without offsetting benefit, unless compensation is first made or assured. The town is exercising the governmental right of eminent domain. So the adversely affected landowners are entitled to compensation for all damages.

The rule of Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462 (see also Rieck v. Schamanski, 117 Minn. 25, 134 N. W. 228), would have protected Larson in reasonable drainage undertaken privately by him on his own land. But when, instead of a private enterprise, we have a public one (compare State ex rel. Wickstrom v. Board of Co. Commrs. 98 Minn. 89, 94, 107 N. W. 730), prosecuted for the pub-

lic benefit and with aid of the power of eminent domain, the private rule of Sheehan v. Flynn, *supra,* ceases to operate and the public one (of the statute, 2 Mason Minn. St. 1927, §§ 6846, 6849, requiring compensation for all property taken or damaged), takes hold of the situation in controlling fashion.

Cited in opposition to our conclusion is Board of Drainage Commrs. v. Board of Drainage Commrs. 130 Miss. 764, 95 So. 75, 79, 28 A. L. R. 1250. The contest there was not between individuals, or between individuals and governmental subdivisions, but between two groups of drainage districts. All of them, we assume, were public corporations exercising governmental powers, including that of eminent domain. Notwithstanding, the discussion of the relative rights of upper and lower riparian owners was in terms of private rather than public rights. The decision was that the upper drainage districts could burden a natural watercourse even beyond its capacity with no resulting legal damage to the lower districts, whose actual substantial damage was conceded. The rule was adopted as the better one [130 Miss. 797] "in view of the peculiar local conditions [of the Mississippi delta] and topography." Any other and contrary rule, it was considered [130 Miss. 795], "would, in effect, destroy the legislative policy as manifested in" the "drainage district laws" of Mississippi. It was frankly recognized that the decision ran counter to much authority. The distinction between cases involving opposition of public rights to each other, and those in similar conflict between private, or between private and public rights, could not have been overlooked because it was made in the concurring opinion of Mr. Justice Ethridge, whose protesting concurrence was based exclusively upon earlier decisions in which he had dissented. His final submission was that [130 Miss. 802] "the drainage laws ought to be so shaped that injury would be cared for, but this is a matter which the court cannot properly take care of."

So we think that case is plainly distinguishable in that our statutes declare that when drainage is undertaken by public authority rather than in the exercise of private right all damage to landowners must be compensated.

The argument is strongly urged that, as to damage resulting from flowage of lower lands, this is a case of damage without legal injury, and so without right to compensation. That would be true if Larson owned the Busse quarter along with his own, for then he would be in the exercise of lawful right[2] in doing just what the town is doing by way of drainage. Also, it may be postulated, that if the town were exercising the police power of government, without more, the case would be one of *damnum absque injuria,* or uncompensated duty of submission. Gray v. Reclamation Dist. 174 Cal. 622, 163 P. 1024. The complete answer is that, the constitution aside, the statute governing this proceeding, 2 Mason Minn. St. 1927, §§ 6846, 6849, requires compensation to all who suffer damage. Hence it is of no consequence that there may be an element of police power activity in the proceeding. Also invoked are the powers of taxation and eminent domain. Curran v. County of Sibley, 47 Minn. 313, 50 N. W. 237; State ex rel. Utick v. Board of Co. Commrs. 87 Minn. 325, 335, 92 N. W. 216, 60 L. R. A. 161; 2 Dunnell, Minn. Dig. (2 ed.) § 2819.

The opposing argument is that if the power of eminent domain is used to effectuate a purpose of police power there

---

[2]No point is made that the water of which Larson wants to rid his premises is not surface water as defined in Schaefer v. Marthaler, 34 Minn. 487, 26 N. W. 726, 57 Am. R. 73. The doctrine of that and other cases, that surface water is a "common enemy" may be somewhat out of date. Long decreased precipitation over large areas may have converted it, or much of it, into a common friend because of its sorely needed contribution to the subterranean water supply, and the consequent elevation of the water table to, and its maintenance at, a plane sufficiently high to support vegetation.

is ordinarily no right to compensation. Whether and under what circumstances damage from an exercise of the police power alone is compensable is a problem we do not consider or decide. Highways are established and maintained by the police power. 25 Am. Jur., Highways, § 19; State ex rel. City of Minneapolis v. St. P. M. & M. Ry. Co. 98 Minn. 380, 387, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 A. S. R. 581, 8 Ann. Cas. 1047. Yet, abutting owners, whose property is damaged, as by change of grade, but not taken, are now entitled to compensation. They were not before the amendment of constitutions and statutes to require compensation for damage as well as taking. Dickerman v. City of Duluth, 88 Minn. 288, 92 N. W. 1119; Sallden v. City of Little Falls, 102 Minn. 358, 113 N. W. 884, 13 L. R. A. (N. S.) 790, 120 A. S. R. 635.

The statute under which the town is proceeding requires compensation. That should be enough. But we examine the proposition somewhat further. As Mr. Rottschaefer states (Rottschaefer, Constitutional Law, p. 694), private property may be taken under the regulatory and taxing powers as well as that of eminent domain. The taking is referable to the police power if it is "a mere incident to a valid regulation to promote the public interest; to the taxing power, if for the primary purpose of raising revenue * * *; and to the power of eminent domain if it is taken primarily for the purpose of permitting the government * * * either to inflict an injury upon the very property taken for a public use, or to utilize it for a public use other than the * * * governmental expenses." That our statutory drainage proceedings invoke the power of eminent domain is plain. That is why the statutes in such mandatory fashion require compensation for all damage done.

A landowner has the right to make reasonable disposition of surface waters. The state, in taking or damaging property by drainage proceedings, does not have the rights

of a landowner because it has no estate. It proceeds, not as an owner of property, but in the exercise of sovereign right. That right is conditioned upon compensation.

Whether respondents have been or will be damaged, and to what extent, are questions not now presented. Their damage, if any, will result from the exercise of power of eminent domain. So it is immaterial that, from the standpoint of public health, the police power justifies the drainage. The property is taken or damaged, not by the police power, but by that of eminent domain. Hence the right to compensation is absolute.

It is not always true that "in the matter of the drainage and disposition of surface waters, a town has the same rights and is subject to the same liabilities as an individual." As used in Oftelie v. Town of Hammond, 78 Minn. 275, 277, 80 N. W. 1123, 1124, and Sandmeier v. Town of St. James, 165 Minn. 34, 36, 205 N. W. 634, the statement is true because in each case it was made in relation to a town's reasonable effort to drain its own highway in respect to which it has the rights of an owner. 3 Dunnell, Minn. Dig. (2 ed. & 1934 Supp.) § 4155. The power of eminent domain with the attending duty of compensation for all damage was not involved.

It seems to us also that inadvertent misapplication of McCarthy v. City of Minneapolis, 203 Minn. 427, 430, 281 N. W. 759, 761, is being attempted. There again there was no exercise of the power of eminent domain. The action was in tort. Damages were claimed for separation of street traffic resulting from the erection of a bridge which was part of the street. "From that change alone plaintiffs suffered no damage."

If an individual reasonably drains surface water from his own premises, there is no injury to his damaged neighbor. He is within his own, and so does not invade the right of his neighbor.

The amendment of constitutions to require compensation for property damaged and the similar declarations of statutes have a purpose which judges may not thwart by restrictive construction. There is abundance of authority that they should be liberally construed to effect their remedial purpose. 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3047. The precise argument here made was rejected by the appellate and supreme courts of Illinois in Lake Erie & Western R. Co. v. Scott, 132 Ill. 429, 436, 24 N. E. 78, 80, 8 L. R. A. 330, 332. Its conclusion is thus stated:

"It follows, therefore, that appellant's proposition that 'a corporation is not liable unless an individual doing the same thing on his private property would be,' as applied to this case, is not sound. An individual cannot legally take or damage private property for public use, but a railroad company can lawfully do either, if in so doing it makes compensation."

Because here the damage, if any, results from an exercise of the power of eminent domain, and, in consequence, the statute, to say nothing of the constitution, requires compensation, the order granting the new trial was right.

Order affirmed.

LORING, JUSTICE, and JULIUS J. OLSON, JUSTICE (dissenting).

We find ourselves in disagreement with the views expressed by Mr. Justice Stone and therefore set out the following reasons for our views.

A "pothole" described by appellant Larson, owner of the 160-acre farm adjoining that of Busse, as "probably 1,400 feet long and probably 500 feet wide" and containing about ten acres, is sought to be drained under the provisions of our township ditch law. It is "practically level" land consisting of a "kind of peaty" soil "suitable for raising crops if drained." While it is "very seldom soft and wet," it has not been plowed, "because if we have a heavy rain

'for quite a while it would get wet," thereby making its use precarious for the raising of cultivated crops. The town board in conformity with the statute (§ 6848) established the drain, having first determined that the drain "will be of public utility or promote the public health." Under the statute (§ 6853) appeals are limited to the issues of: (1) The "amount of benefits to any tract of land" involved in the proceedings; (2) "amount of damages allowed" to any landowner whose property may be damaged by the establishment of the drain; and (3) for "refusing to establish such proposed ditch." The appeals here involved are based upon the second ground. So the issue narrows down to the question of whether the rule as to damages adopted and applied by the court at the trial is the correct one.

All parties are in agreement that if Larson owned the land to the point where the established drain outlets on Busse's land, or if Busse consented to have it so extended, the surface water there discharged into the watercourse would not justify the recovery of damages on the part of any landowner below. The record also clearly shows that the only practical way to bring about the desired improvement so as to be of "public utility" and "promote the public health" is by the construction of the proposed drain. This is so for the reason that the surface water, as conditions now exist in and around this pothole, has for its outlet only a long, crooked, horseshoe route lying almost wholly in the adjoining county of Martin.

Obviously, the construction of the drain does not create water; it but lowers the water level. That the surface water flow ultimately finds its outlet in the watercourse passing over the easterly portion of Busse's land is equally clear. That the owners of lands lying below must accept this burden without compensation is conceded by the majority, since in the opinion it is stated that Larson then "would be in the exercise of lawful right in doing just

what the town is doing by way of drainage." And, so the opinion further postulates, "if the town were exercising the police power of government, without more, the case would be one of *damnum absque injuria.*"

The town is exercising its police power and could not establish the ditch unless it were of public utility or beneficial to the public health. From the standpoint of constitutional law the benefit to individual proprietors is merely incidental to the public benefit. In Lien v. Board of Co. Commrs. 80 Minn. 58, 64, 82 N. W. 1094, 1096, this court in discussing the county drainage act said:

"Section 1 of the act clearly shows that the intent and purpose of the legislature was to further and promote the public interests, and section 9 makes a finding of such public purpose an essential to the jurisdiction of the commissioners to proceed. This is clearly conclusive against appellants' contention that the objects of the statute are in furtherance of private interests. *It does not matter that in accomplishing the public objects of the act private interests are advanced. Such a result is merely incidental, and does not affect the validity of the law.*" (Italics supplied.)

We find nothing in the constitutional provision in regard to the taking or damaging of property for public purposes which establishes any change in the rule of damages which are to be assessed or recovered in a situation of this kind, nor does the statute referred to in the opinion indicate a change in the rule as to damages assessable. Neither the constitution nor the statute creates any new right or cause of action. We need go no further on this question than to quote from the unanimous opinion of this court in McCarthy v. City of Minneapolis, 203 Minn. 427, 429, 281 N. W. 759, 760, in which we said:

"By the constitutional amendment covering damage without taking, no new cause of action unknown to the com-

mon law was created. The amendment but removed a bar imposed by some legislative and some constitutional law to one species of action in tort. Its incidence is not on 'the substantive law of damages.' Its only purpose is to allow recovery in the same circumstances and manner against corporations having power of eminent domain as against those not enjoying that power (Stuhl v. G. N. Ry. Co. *supra* [136 Minn. 158, 161 N. W. 501, L. R. A. 1917D, 371])—'to give a remedy merely for legal wrongs, and not for such injuries as were *damnum absque injuria.*' Smith v. St. P. M. & M. Ry. Co. 39 Wash. 355, 366, 81 P. 840, 844, 70 L. R. A. 1018, 1024, 109 A. S. R. 889."

This statement of the law is supported by the overwhelming weight of authority in the state and federal courts. In fact, it was but a restatement of the law already established in this state by Stuhl v. G. N. Ry. Co. 136 Minn. 158, 161 N. W. 501, L. R. A. 1917D, 317. It is well established, then, in this state, that the constitution uses the word "damaged" as a legal term and as the equivalent of actionable wrong and that it does not modify the principle expressed in the phrase *"damnum absque injuria."*

It remains for us to discuss the question of whether the casting of surface waters by the township, in the exercise of its police power functioning through the right of eminent domain, creates a liability on its part which would not rest upon an individual who was in a position, without trespass, to cast the same surface waters upon the same place. It has been stated in our decisions that "in the matter of the drainage and disposition of surface waters, a town has the same rights and is subject to the same liabilities as an individual." This the court said speaking through Mr. Commissioner Lees in Sandmeier v. Town of St. James, 165 Minn. 34, 36, 205 N. W. 634, 635. It is true that in that case the court was discussing the drainage of a highway by the township, but we can see no difference in principle between the exercise of its governmental

functions by a township in the drainage and protection of its highway from the exercise of its police power in the interest of public health. In the case at bar, the town board, acting within the delegated police power conferred upon it by the state, took surface waters from the dominant area, which happened to be owned by Larson, and, by the most direct route, cast it upon the servient estate of Busse, where it would have gone naturally by a more circuitous route had it been practicable to drain it in the latter way. Is there any difference in the legal situation than if the town board had conducted surface waters away from its highway by a lateral ditch constructed in the exercise of its right of eminent domain and cast them upon Mr. Busse's land? It strikes us that the state's police power properly delegated to the township extended as a paramount right throughout this drainage area, and, when properly invoked by petition, as in this case, it was a dominant right superior to private titles, which it might exercise in the interest of the public health and public interest. In so doing, we think it might cast surface waters from any dominant part of the area to any servient part thereof, and that it had the same right as an individual might have in circumstances where he was as free to exercise it as the township is here. Larson might reasonably cast the surface waters from his land upon Busse's even if he had to pump them over the ridge or hogback, provided he did not in his operations trespass upon Busse's land. The township, on the other hand, might do what Larson as an individual could not do because it could relieve itself of the status of trespasser by exercising its right of eminent domain to enter upon Busse's land by paying him for the physical invasion in undertaking the construction of the tile drain and discharge basin. It is true that in State ex rel. Wickstrom v. Board of Co. Commrs. 98 Minn. 89, 94, 107 N. W. 730, 732, this court, speaking through Mr. Justice Jaggard, said:

"No good reason suggests itself for extending that doctrine [Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462] to cases of county ditches, in which the public may undertake to drain large tracts of land belonging to many proprietors, *not exclusively of surface waters,* and to divert the resulting waters and cast them in large and injurious quantities upon the lands of others."

But it is quite apparent that the court there had in mind a situation which was not confined to surface waters, and this court in Oftelie v. Town of Hammond, 78 Minn. 275, 80 N. W. 1123, as well as in the later case of Sandmeier v. Town of St. James, 165 Minn. 34, 205 N. W. 634, took the position that, insofar as the disposition of surface waters is concerned, the town has the same rights and is subject to the same liabilities as an individual. We do not regard Grey v. Reclamation Dist. 174 Cal. 622, 640, 163 P. 1024, 1032, cited by the majority, as establishing any other doctrine. In that case flood waters rather than surface waters were involved, and the court states: "Where the police power is legitimately exercised, uncompensated submission is exacted of the property owner if his property be either damaged, taken, or destroyed." We do not regard this as indicating that a physical invasion, such as was involved on Busse's property by the tile ditch and discharge basin, would be regarded by the California court as not compensable, but that it was referring to the disposition of water. It said that its constitution by the use of the word "damaged" "did not, touching the exercise of the police power, give a right of action for damages which theretofore were *damnum absque injuria.*" In Jordan v. City of Benwood, 42 W. Va. 312, 26 S. E. 266, 36 L. R. A. 519, 57 A. S. R. 859, the court had before it the question whether or not the city was liable for surface waters which its work for the first time brought upon the plaintiff's lot from other premises than hers, and the court held that the common-law rule as to the disposition of surface waters was appli-

cable to the city and that the word "damaged" put into the constitution of that state was not designed to put on the state or its subdivisions a burden not resting on individuals under like circumstances. This case involved not only surface waters which accumulated on the city's streets but which originated on other lots than plaintiff's and were cast upon her land by reason of the city's operations in the exercise of its police power. In Rhodes v. Airedale Drainage Commrs. Law Rep. 1 C. P. Div. p. 402, the court of appeal in that division held that the plaintiff was entitled to no greater or different relief against the drainage commission than against any individual riparian owner. The court also held that the word "damage," as used in the act, did not enlarge or extend the legal damages or include damages theretofore regarded as *damnum absque injuria.*

In the case of Board of Drainage Commrs. v. Board of Drainage Commrs. 130 Miss. 764, 95 So. 75, 28 A. L. R. 1250, the court made no distinction between the rights of public drainage districts and those of private individuals with reference to the disposition of surface waters and, in disposing of the case, grounded its decision upon the rules which govern the disposition of such waters as between individuals. The majority seems to have adopted the dissenting views expressed by Mr. Justice Ethridge in his special concurrence.

Rieck v. Schamanski, 117 Minn. 25, 134 N. W. 228, and Hartle v. Neighbauer, 142 Minn. 438, 172 N. W. 498, are helpful.

We are of the opinion that the trial court was right in submitting the case to the jury and excluding from their consideration damages to Busse's land due to the surface waters that might be cast into the natural drain and in directing a verdict against the lower proprietors. We think that his later act in granting a new trial for errors of law alone should be reversed and the verdicts reinstated.