## C. O. WELSCH v. THE ELK RIVER POWER & LIGHT COMPANY.[1]

January 4, 1924.

Nos. 23,609, 23,610, 23,611, 23,612, 23,613.

**Measure of damages for flooding land.**

1. The measure of damages for overflowing land where the flooding is to be permanent is the diminution in the value of the land; where the flooding is not to be permanent, it is the diminution in the rental value of the land.

**Award to plaintiff not sustained in absence of evidence.**

2. A finding that plaintiff is entitled to a specified sum for the damages which had accrued prior to the trial, cannot be sustained where there is no evidence as to the rental value of the land nor as to the extent to which its rental value had been diminished.

[1]Reported in 196 N. W. 649.

**No presumption of unlimited right of flowage from reservation in deed.**

3. Where land is conveyed subject to the flowage caused by the dam then existing or which might be built in the future, it will be presumed, in the absence of anything indicating the contrary, that the parties contemplated the continuance of existing conditions without any radical change, and did not intend to create an unlimited right of flowage.

Five actions in the district court for Sherburne county by riparian owners to recover damages and to require defendant to reduce the height of its dam across Elk river so that waters of the river be permitted to flow off their lands. The cases were tried before Johnson, J., acting for the judge of the Eighteenth judicial district, who made findings and ordered judgments in favor of the respective plaintiffs, and that the nuisance created by the flashboards on the top of the dam be abated. Defendant's motion for amended findings was granted in part. From the judgments entered pursuant to the orders for judgment, defendant appealed. Reversed.

*Einar Hoidale*, for appellant.

*George Tyler*, for respondents.

TAYLOR, C.

The defendant is a public service corporation engaged in generating electric current and supplying it to municipalities and the general public. Seven or eight years ago, defendant erected a plant at the village of Elk River for generating electricity and constructed a concrete dam across the Elk river for the purpose of providing power to operate it. In 1920, needing more power, defendant raised the height of the dam about three feet by placing flashboards on the top of it. Five landowners owning separate parcels of land above the dam, portions of which are overflowed by the water held back by it, brought separate actions to recover damages and to compel defendant to lower the dam so that it would not back the water upon their lands.

The pleadings in these actions are identical in form, except as to the description of the land involved and the amount of damages claimed, and they were tried together. It was conceded at the open-

ing of the trial that defendant had the right to maintain the water at the height to which it was raised by the concrete dam; that the plaintiffs complained only of the damage resulting from the increased height of the water caused by the flashboards. The court, in each case, made findings in favor of the plaintiff, denied a motion for a new trial, and rendered judgment on the findings. Defendant appealed from these judgments, and the several appeals are submitted to this court on the same record. As the findings and judgments in respect to the matters in controversy are the same in all the cases, only the findings and judgment in the Welsch case have been printed in the record. For convenience we will consider that case as if it stood alone, but it may be understood that what is said applies equally to the other cases.

The court found, among other things, that defendant, without right, had increased the height of the dam three feet and one inch by placing flashboards "of a semi-permanent character" on the top of it; that such increased height "causes and maintains a permanent overflow" of a portion of plaintiff's land; "that plaintiff has been damaged thereby up to date of the trial hereof in the sum of $425;" and that maintaining such flashboards is a continuing nuisance as to the plaintiff. Although not important in determining the questions here presented, the court further found that, without the additional power created by the flashboards, defendant could not furnish adequate service to its customers, unless it operated an auxiliary steam plant provided for use in cases of emergency. As conclusions of law the court found that plaintiff was entitled to judgment for the sum of $425, that the nuisance created by the flashboards should be abated, and that a mandatory injunction should issue commanding defendant to remove them forthwith.

Defendant insists that the finding that plaintiff is entitled to the sum of $425 for the damages which had accrued prior to the trial is not sustained by the evidence, that this sum is, in fact, the amount of damages for the permanent flooding of the land by the water cast upon it by the flashboards, and that plaintiff cannot recover damages for the permanent flooding of his land and also compel the removal of the flashboards.

The measure of damages for overflowing land, if the flooding is not to be permanent, is the diminution in the rental value of the land—the difference between its rental value with the water upon it and its rental value without the water upon it. The measure of damages, if the flooding is to be permanent, is the diminution in the value of the land—the difference between its fair market value in its flooded condition and its fair market value if free from such flooding. Jungblum v. Minneapolis, N. U. & S. W. Ry. Co. 70 Minn. 153, 72 N. W. 971; Fossum v. Chicago, M. & St. P. Ry. Co. 80 Minn. 9, 82 N. W. 979; Larson v. Lammers, 81 Minn. 239, 83 N. W. 981.

Plaintiff offered no evidence as to the rental value of his land either with or without the water cast upon it by the flashboards, and made no attempt whatever to show the diminution in rental value caused by the flooding. The only evidence which he offered to show the amount of his damages, was testimony as to the value of his land in its present flooded condition and its value if not flooded. This furnished a basis for determining the amount of damages to which he would be entitled for the permanent flooding of his land, but did not furnish a basis for determining the amount to which he would be entitled for the temporary flooding of it. It follows, therefore, that the finding that plaintiff was entitled to the sum of $425 for the damages which had accrued prior to the trial is without support in the evidence and cannot be sustained.

Defendant argues that, as the only damages which plaintiff proved or attempted to prove were the damages to which he would be entitled for overflowing his land permanently, and as the court found that the increased height of the dam "causes and maintains a permanent overflow" of the land, the findings, taken in connection with the evidence, should be construed as awarding plaintiff the sum of $425 as and for the damages which will be caused to his property by maintaining the dam permanently at its present height. Apparently, defendant does not seriously object to the amount of the award, but to the requirement that it lower its dam. It takes the position that the award covers the damages for the permanent flooding of the land, and that the court erred in requiring it to remove the flashboards. Of course plaintiff cannot recover on the theory

that the present height of the dam is to be permanent, and also require it to be lowered. But the finding states specifically that the sum awarded is the amount to which plaintiff is entitled for the damages which had accrued prior to the trial. Although the evidence does not warrant the finding as made, we cannot give it the effect contended for by defendant. There is no finding of the amount of damages for permanently flooding the land, and we cannot make such finding; that is the province of the trial court.

In view of a new trial it is proper to add that defendant's contention that three of the plaintiffs are barred from recovering by a reservation in a deed under which they hold, is not tenable. W. H. Houlton owned the water power in question and maintained a dam across the river for many years. He also owned the lands now owned by these three plaintiffs. When he conveyed the lands to the predecessor in title of these plaintiffs he inserted in the deed the following reservation for the benefit of his water power:

"Subject, however, to the flowage of the waters of the Elk River over the said lands by the mill dam now built, or which may in the future be built and constructed across the said river."

It will be noticed that this provision fails to fix the height to which the water may be raised. A dam was then in existence and had been maintained across the river for many years. It will be presumed that the parties had in mind the conditions then existing and made their contract with reference to such conditions. In the absence of anything to indicate such intention, it will not be presumed that they intended to create an unlimited right of flowage, but rather that they contemplated the continuance of the existing conditions without any radical change. Schlag v. Gooding-Coxe Co. 98 Minn. 261, 108 N. W. 11.

As they had in mind that a new dam might be built and omitted to specify the height to which the water might be raised, or to provide that the new dam should not exceed the height of the old, it will be presumed that they did not intend to fix a definite and specific limit to the height to which the water might be raised, but it will not be presumed that they contemplated any large or substantial

increase in the extent of the flowage. The concrete dam without the flashboards is considerably higher than the old dam, and it cannot be held as a matter of law that the reservation gives defendant the right to raise the water still higher by means of flashboards.

For the reason that the award of damages is not sustained by the evidence, the judgment is reversed and a new trial granted in each of the cases.