## JOHN KALLEVIG v. HAROLD HOLMGREN AND OTHERS.

197 N. W. 2d 714.

May 12, 1972—No. 42808.

*Weis & Frauenshuh* and *Rainer L. Weis,* for appellant.

*Johnson, Schmidt, Thompson, Lindstrom & Thompson* and *John C. Lindstrom,* for respondent Merland Holmgren.

*Molter & Runchey* and *Robert C. Runchey,* for other respondents.

Heard before Knutson, C. J., and Otis, Rogosheske, and Peterson, JJ.

Rogosheske, Justice.

Plaintiff, John Kallevig, appeals from a denial of his post-trial motions for judgment notwithstanding the verdict or, in the alternative, for a new trial. Plaintiff's actions for damages were submitted to the jury upon claims (1) that defendant Holmgren Brothers, Inc., unreasonably diverted surface waters from its 19-acre tract of land across plaintiff's farmland, and (2) that individual defendant Merland Holmgren unreasonably diverted upon plaintiff's land overflow and waste from an apartment building septic tank situated on a 1-acre tract adjoining the 19-acre tract.[1]

Consistent with what the trial court could reasonably accept as plaintiff's theory of the case, the issues raised by the evidence were submitted to a jury upon separate general verdicts, accompanied by special interrogatories, as to each of plaintiff's claims. The three special questions accompanying the general verdicts related to whether defendants violated the terms of a drainage-easement agreement executed between plaintiff's and defendants' predecessors in title and whether, in light of the diversion of surface waters, the defendants' use of their respective tracts of land was reasonable. The jury found in favor of defendants on both the general verdicts and the answers to the special questions. Since, except for a nonprejudicial error, the court's instructions to the jury on the law were correct, and since the evidence amply supports the findings of the jury, we affirm.

The evidence established these material facts. Plaintiff owns a 192-acre farm, 166 acres of which are devoted to raising field crops, and defendants own a combined 20-acre tract of land, located immediately north of plaintiff's acreage and devoted to residential development. Both plaintiff's land and defendants' land naturally drain into Foote Lake over a natural watershed running from north to south across plaintiff's land. At the time plaintiff purchased his farm in 1938, there existed a perpetual

---

[1] The action against Harold Holmgren and Alden Holmgren individually, as owners of the corporation, was dismissed.

easement, dated October 19, 1929, and filed of record. The easement granted a Mr. Konsterlie, the owner of the farmland lying north of plaintiff's land and including defendants' 20-acre tract, the right to run a tile to plaintiff's adjoining north boundary for the purpose of draining several potholes on Konsterlie's land into the natural watershed across the land later acquired by plaintiff. Plaintiff became aware of this easement in 1958 when Mr. Konsterlie put in a new 8-inch cement tile parallel to the previously installed 7-inch clay tile, which no longer functioned in draining the potholes.

By 1966, Holmgren Brothers, Inc., became the owner of the 20-acre tract purchased from Konsterlie. As indicated, this tract adjoined plaintiff's northern boundary and included the drainage tile installed in 1939 and 1958. The tract was acquired for residential development. In 1966, Merland Holmgren purchased from defendant corporation an acre of land in the northeast corner of the 20-acre tract and constructed an apartment building containing 6 units, which he rented for residence by up to 25 students at Willmar Junior College, which adjoined defendants' property on the east. Defendant corporation planted trees on the rest of the property and also constructed a north-south road, which ran west of the apartment building and continued south the entire length of the 19-acre tract to a small ridge or embankment at the fence line separating plaintiff's and defendants' property. Defendants, while leaving the embankment at the end of the road to hold back water, dug an east-west ditch along the south line of their property, paralleling the fence line apparently to a low point on defendants' land where the ridge leveled and the land presumably drained onto plaintiff's property. Merland Holmgren put in a septic tank about 100 feet southwest of the apartment building and ran an overflow tile from the tank under the road to the more northerly pothole located on the corporate property west of the road, where it was connected to the 1958 drainage tile. Because the potholes were connected by the 1958 drainage tile, the septic tank overflow tile

then ostensibly connected the septic tank to the drainage tile which emptied at the northern edge of plaintiff's land.

In the spring of 1967, after plaintiff complained to Merland Holmgren about an abnormal amount of water coming onto his land from the point where the drainage tile emptied, the intake in the most southerly pothole was plugged, the east-west ditch at the end of the road was barricaded, and a minor breakthrough of the embankment at the end of the road was also repaired. Water continued to seep through the tile, however, especially after a rainfall or after the spring thaw. A sudden 4-inch rain in June 1968 precipitated a major breakthrough of the embankment which remained unrepaired until the time of suit. Plaintiff alleged that the diversion of waters, caused by the tile runoff and the breakthrough in the embankment, and the small gully formed just below the embankment significantly interfered with the tillage of his tract of land immediately south of the defendants' property and further that effluent from the septic tank was being run off onto his land.

The determinative issues presented are (1) whether a new trial should have been granted for erroneous instructions in which the effluent of a septic tank was treated as diversion of surface waters and, as argued by plaintiff, for incomplete instructions concerning the measure of damages for unreasonable use of land in the diversion of surface waters; and (2) whether the evidence sustains the jury's special findings that the 1958 drainage tile conformed to the perpetual easement and that the north-south road, as constructed, constituted a reasonable use of defendants' property. The special interrogatories[2] and the

---

[2] "1.  (a)  Does the cement tile as constructed by R. M. Konsterlie in 1958 on the Holmgren land substantially comply with the terms and conditions of the drainage agreement contained in Defendant Holmgren Brothers, Inc. Exhibit 1?

"Yes   Answer yes or no
If your answer to (a) above is 'no,' answer question (b). If your answer to (a) above is 'yes,' do not answer (b).

"(b)  Considering the diversion, if any, of surface water on to the

trial court's instructions to the jury were based upon the principle commonly called the reasonable-use rule announced by this court in Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462 (1894). The rule is that surface water is a common enemy which the possessor can drain from his land onto his neighbor's so long as in doing so he uses his land reasonably, he does not unnecessarily or unreasonably injure his neighbor, and his benefit outweighs any injury caused.[3]

The trial court, however, in its instructions to the jury, said that the standard of reasonableness governed defendant Merland Holmgren's connection of the septic tank overflow tile to the drainage tile:

"* * * [O]ne who owns land has the right to improve his land by levelling, lowering, building roads, landscaping and other improvements, *including the disposition of waste or overflow from a septic tank,* and to make all such other improvements that would run to the full use and enjoyment of the land, even though

---

lands of John Kallevig, does the cement tile as constructed by R. M. Konsterlie in 1958 on the Holmgren land constitute a reasonable use of the Holmgren land?

"—— Answer yes or no

"2. Considering the diversion, if any, of surface waters on to the John Kallevig lands, does the roadway as constructed on the Holmgren land constitute a reasonable use of such land?

"Yes Answer yes or no

"3. Considering the diversion, if any, of the overflow from the Merland Holmgren apartment septic tank on to the lands of John Kallevig, does the connection of such overflow drain with the cement tile line constitute a reasonable use of the Merland Holmgren one-acre tract of land?

"Yes Answer yes or no"

[3] See, also, Sachs v. Chiat, 281 Minn. 540, 162 N. W. 2d 243 (1968); Johnson v. Agerbeck, 247 Minn. 432, 77 N. W. 2d 539 (1956); Enderson v. Kelehan, 226 Minn. 163, 32 N. W. 2d 286 (1948); Collins v. Wickland, 251 Minn. 419, 88 N. W. 2d 83 (1958); Kinyon & McClure, *Interferences with Surface Waters,* 24 Minn. L. Rev. 891, 904; 1 Clark, Waters and Water Rights, § 52.1(A).

in doing so some harm may fall upon adjoining land, providing that such improvements are reasonable under the circumstances in respect to the adjoining lands." (Italics supplied.)

The diversion of surface water by tile does not alone take this case out of the Sheehan rule[4] but surely the rule does not contemplate septic tank effluent as a "common enemy" which can be discharged upon a neighbor's land. The rule announced in Sheehan applies only to surface water consisting of the uncollected flow of rain, melting snow, or water rising from springs, which diffuses on the surface or saturates the ground but which does not form part of a well-defined body of water or natural watercourse.[5] The runoff of a septic tank overflow places a significantly different burden on a neighbor than does the diversion of surface water. See, e. g., Herrmann v. Larson, 214 Minn. 46, 7 N. W. 2d 330 (1943). And neither the reasonable-use rule nor the terms of the easement permitted defendant Merland Holmgren to cast such effluent upon plaintiff's land.

Plaintiff did not object to this instruction at the time the case was submitted to the jury, but he did claim error in his post-trial motion.[6] While the instruction was erroneous, we are not persuaded that any prejudice resulted which would warrant our granting a new trial. Hlubeck v. Beeler, 214 Minn. 484, 9 N. W. 2d 252 (1943). The evidence falls short of raising a jury issue that waste was in fact part of the runoff from the tile. Rather, a finding of the absence of waste runoff, implicit in the jury's

---

[4] Hartle v. Neighbauer, 142 Minn. 438, 172 N. W. 498 (1919). See, also, Wiltscheck v. Werring, 146 Minn. 115, 178 N. W. 169 (1920); Rieck v. Schamanski, 117 Minn. 25, 134 N. W. 228 (1912); Hopkins v. Taylor, 128 Minn. 511, 151 N. W. 194 (1915).

[5] Enderson v. Kelehan, footnote 3, *supra;* Hartle v. Neighbauer, *supra;* Restatement, Torts, § 846; 3 Farnham, Waters and Water Rights, § 878; Clark, footnote 3, *supra.*

[6] A fundamental error of law in the court's instruction is properly before this court for review even though belatedly raised in a post-trial motion. Rule 51, Rules of Civil Procedure; Donald v. Moses, 254 Minn. 186, 94 N. W. 2d 255 (1959).

general verdict and its special findings, is compellingly sustained by the evidence. The overflow tile, and presumably the 1958 tile put in by Mr. Konsterlie, both had the customary 1/8-to 1/4-inch opening between each segment. The total tile distance from the septic tank to the outlet at plaintiff's north boundary line was approximately 1,060 feet, and the ground it ran through was of sandy consistency. This, coupled with the fact that the tile running to plaintiff's property was plugged at the south pothole intake and the absence of any evidence of offensive matter in the runoff, demonstrates that the overflow pipe and drainage tile acted as a drain field for the septic tank wholly upon defendants' land. Thus, any award for plaintiff's claim of damages for discharging effluent upon his lands could have been based only on speculation and conjecture, and the claim should not have been submitted to the jury.

In his post-trial motion, plaintiff also objected to the trial court's manner of submitting the measure of damages necessary to compensate plaintiff for any temporary injury caused by an unreasonable use of defendants' land in their diverting surface waters. The court had instructed the jury to measure the damages for any permanent injury by the decrease in market value in plaintiff's land and to measure the damage for any temporary injury by the difference in rental value before and after the diversion until the time of trial. Plaintiff argues that the jury should also have been instructed to award as damages the cost of replacing washed-away soil as a separate and additional element of his alleged temporary injury. The general verdict and special findings imply that defendants were not liable for any damages because the use of their property was reasonable. However, it is possible to imply from the general verdict that regardless of the reasonableness of defendants' use, the jury found that no damages were suffered by plaintiff or that any damages suffered did not outweigh the defendants' reasonable use. If such were the basis of the jury's finding, we are of the opinion that under the facts of this case, the court's refusal to include

the cost of restoration as a separate element of damages for temporary injury was not error. While the cost of replacing lost soil could be recovered in addition to the decrease in rental value in the proper case where damages for a temporary injury alone are sought, in this case plaintiff sought damages for both permanent and temporary injuries. A duplication of damages would result if the plaintiff were to recover both the diminished market value for a permanent injury, which in this case would necessarily include any loss of soil, and additionally, the cost of replacing the soil as an element of his damage award for any temporary injury. Lynch v. Minnesota Power & Light Co. 174 Minn. 443, 219 N. W. 459 (1928). See, also, Fossum v. Chicago, M. & S. P. Ry. Co. 80 Minn. 9, 82 N. W. 979 (1900) ; Welsch v. The Elk River Power & Light Co. 157 Minn. 451, 196 N. W. 649 (1924) ; Larson v. Lammers, 81 Minn. 239, 83 N. W. 981 (1900) ; Jungblum v. Minneapolis N. U. & S. W. R. Co. 70 Minn. 153, 72 N. W. 971 (1897).

On a review of this rather confusing record, we are satisfied that the evidence clearly permitted the jury to find that the tile put in by Mr. Konsterlie in 1958, although 1 inch wider in diameter, was laid in such a way as to not increase water flowage and, therefore, that the 1958 tile complied with the perpetual easement. And, realizing that defendants' road gave access to the apartment building (a significant improvement) and provided for potential future development of the 19-acre tract; that the breakthrough in 1968 was unintended by defendants; and that plaintiff's showing of damages caused by the breakthrough was at best minimal, the finding that the road with the embankment at the south end was a reasonable use of defendants' property is also amply sustained by the evidence. The reasonableness of the use is a question of fact to be determined in each case, Sachs v. Chiat, 281 Minn. 540, 162 N. W. 2d 243 (1968).

Other issues raised on appeal are without merit. Any claim by plaintiff for abatement of discharging effluent was, for reasons we cannot discern, neither pursued at trial nor adjudicated.

The finding of reasonable use has been litigated to a conclusion, but if any subsequent damages occasioned by unreasonable diversion of surface waters or effluent runoff should occur, future claims by plaintiff would not be barred by this action.

Affirmed.

MR. JUSTICE TODD and MR. JUSTICE MACLAUGHLIN, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.