**PALATINE NATIONAL BANK OF PALATINE, ILLINOIS, Respondent,**

v.

**Kenneth P. OLSON, et al., Appellants.**

**No. C3–84–1801.**

Court of Appeals of Minnesota.

May 7, 1985.

Joe A. Walters, Richard L. Evans, Minneapolis, for appellants.

Richard D. Donohoo, Seth M. Colton, St. Paul, for respondent.

Heard, considered, and decided by PARKER, P.J., and LANSING and HUSPENI, JJ.

## OPINION

PARKER, Judge.

This appeal arises from three consolidated actions commenced by Palatine National Bank against Kenneth P. Olson, High Site, Inc., Southwest Properties, and Carrousel Trucking, Inc., for nonpayment of four promissory notes.

A jury found for Palatine by special verdict. Appellants claim the notes are unenforceable, that two notes have been released, and that the trial court erred in its

instructions to the jury and in holding appellants jointly and severally liable for all attorney's fees. We affirm in part, vacate in part, and remand.

## FACTS

Respondent Palatine National Bank of Palatine, Illinois, sued appellants on four promissory notes executed in late 1974 and early 1975. Lee Morrison was president of Palatine when the notes were executed; Willis Glassgow has been president since August 1975.

Appellant Kenneth P. Olson is a Minnesota-based businessman. Appellants High Site, Inc., and Carrousel Trucking, Inc., formerly Olson Planned Interiors, Inc. (Carrousel), are Minnesota corporations. Appellant Southwest Properties is a Minnesota limited partnership.

In the fall of 1974 Morrison asked Olson's advice on a problem loan (the Edgar-Rintz note). Morrison and Olson agreed on a plan designed to solve the problem posed to Palatine by the Edgar-Rintz note and to provide Olson with funds for his businesses. In essence, Palatine discounted the Edgar-Rintz note, and Olson Properties, Inc., a company owned by Olson, signed a note replacing it. In return, Palatine agreed to extend four loans to various corporations and associates of Olson at favorable interest rates. In addition, Palatine agreed to substitute a ten-year note for an existing short-term note.

Four of the notes are the subject of this lawsuit. A description of the four notes follows:

1. Schall Hotel Corp. Note:

| | |
|---|---|
| Date Executed: | December 31, 1974 |
| Note Amount: | $436,777.20 |
| Amount Due: | $389,539.29 |

At the time this note was executed, Olson and George Schall each owned one-half of the Schall Hotel Corp., a management company. Shortly before the Schall note was executed, Palatine had loaned $250,000 on a short-term basis to Olson Companies, Inc., a corporation owned by Olson. The Schall note replaced the earlier note. George Schall personally guaranteed the Schall note. In July 1975 Palatine released

Schall from his guarantee, and Olson became guarantor of the Schall note. Palatine sued Olson on the guarantee.

2. Olson Properties, Inc., Note:

| | |
|---|---|
| Date Executed: | December 31, 1974 |
| Note Amount: | $436,777.20 |
| Amount Due: | $280,271.08 |

Olson personally guaranteed this loan, and Palatine sued him on the guarantee.

3. Edward J. Kocourek Note:

| | |
|---|---|
| Date Executed: | January 10, 1975 |
| Note Amount: | $342,141.60 |
| Amount Due: | $85,535.20 |

Edward Kocourek, an employee and business partner of Olson, signed this note. On July 1, 1976, Kocourek assigned to Palatine amounts due him from appellant Southwest Properties. The payments from Southwest Properties equalled the monthly payment due on the Kocourek Note.

On May 6, 1977, appellant High Site, a corporation of which Olson was president, agreed with Palatine to assume Kocourek's liability under the note. High Site was sued for the balance due.

4. Olson Planned Interiors Note (now Carrousel Trucking):

| | |
|---|---|
| Date Executed: | January 2, 1975 |
| Note Amount: | $369,582 |
| Amount Due: | $215,589.65 |

The Olson Planned Interiors note was secured in part by receivables from High Site and a partnership of Olson's called the Lake Tower Inn. Palatine sued Olson on the Lake Tower Inn receivable, High Site on its receivable, and Carrousel on the note.

Almost immediately after the loans were given, bank examiners declared that the loans flowed directly or indirectly to Olson and therefore exceeded Palatine's legal lending limit. Faced with the possibility of personal liability for the loans, Palatine's board of directors voted not to approve them and demanded that Olson return the money immediately. Olson said the money had been spent.

For several years Olson and Palatine attempted to satisfy the loans. Two doc-

uments executed during that period are at issue in this appeal: a document titled "Release" concerning the Olson Properties note and a UCC termination statement covering the High Site receivable which secured the Olson Planned Interiors note.

The notes have not been paid, and Palatine filed three separate lawsuits against the various appellants for the amounts due. The lawsuits were consolidated for trial.

At the close of the evidence the trial court granted High Site's motion for a directed verdict, dismissing Palatine's claim against it on the Olson Planned Interiors note. The remaining issues were submitted to a jury on a special verdict form. The jury found in favor of Palatine on all claims. After post-trial motions by both sides, the court reversed its directed verdict and ordered judgment in favor of Palatine against High Site.

Each note provides that its debtor or guarantor agrees to pay the legal expenses incurred by Palatine in collecting payment. The trial court gave Palatine judgment for its attorney's fees jointly and severally against all appellants.

## ISSUES

1. Was the jury's finding that respondent had not released appellants Olson and Olson Properties, Inc., from liability on the Olson Properties Note supported by admissible evidence?

2. Did the trial court err by entering judgment against High Site for the amount of its receivable?

3. Did the trial court make an error of fundamental law by failing to instruct the jury on the legal meaning of a release?

4. Does the evidence support the jury's finding that the notes at issue did not violate 12 U.S.C. § 1972?

5. Did the trial court abuse its discretion in ordering judgment for attorney's fees against appellants jointly and severally?

## DISCUSSION

### I

Olson and Olson Properties, Inc., argued at trial that Palatine had released them from the Olson Properties note with a written release dated March 30, 1978, and signed by Glassgow. Olson testified that the release was given without condition. The release states no condition on its face.

Also introduced into evidence was a letter dated March 28, 1978, addressed "[t]o whom it may concern," and signed by Glassgow. The letter discusses the history of the loan packages and states in part:

In consideration for Mr. Olson's working with Palatine National Bank in seeing that these loans are brought to a successful conclusion, Palatine National Bank has discharged Mr. Olson and any and all of his companies and/or entities from the fifth loan that was charged off in March of 1976 in the amount of approximately $284,000 (this loan being the original problem loan purchased by Mr. Olson).

Glassgow testified that Palatine provided the release and letter to help Olson arrange financing which might have enabled him to pay Palatine in full. Glassgow said the release was contingent upon the other loans being brought to a successful conclusion.

The jury specifically found that Palatine did not release Olson and Olson Properties, Inc., from their obligations on the note. Appellants claim the evidence does not support the verdict, arguing that the release and letter clearly show Palatine had discharged them from their obligation on the note without condition in return for Olson's past efforts in working with Palatine to pay off the loans. They further contend that Glassgow's oral testimony that the release was contingent is barred by the parol evidence rule because it alters the terms of the release. We disagree.

In reviewing jury verdicts the appellate court must consider all testimony in the light most favorable to the prevailing party. *Stuempges v. Parke, Davis & Co.,*

297 N.W.2d 252, 256 (Minn.1980). A verdict will be disturbed only if it is "manifestly and palpably contrary to the evidence." *Id.* Review is even more limited when the jury verdict must consider the demeanor of the witnesses. *Id.*

In *Jansen v. Herman*, 304 Minn. 572, 230 N.W.2d 460 (1975), two of the parties entered into an agreement which indicated that a commission had been earned. The agreement stated that the Hermans "are indebted to Edward's Realty * * * as and for commission *earned* in the sum of Fifty Thousand ($50,000) Dollars for the sale of certain property * * *." *Id.* at 574, 230 N.W.2d at 462 (emphasis added). Herman was allowed to testify, however, that the parties had agreed the commission was payable only if the transaction were actually closed. The *Jansen* court held that Herman's parol evidence was admissible to show the existence of a condition precedent to the contract:

> The law is clear that oral evidence of discussions, negotiations, or understandings is not admissible to vary or contradict the terms of a clear, unambiguous, and integrated written contract. * * *
>
> In every instance where the parol evidence rule is sought to be applied, however, a threshold question must be asked: Is the contract valid and operative? If the contract was to be binding only upon performance of an agreed-upon condition precedent, then the contract goes into force only upon the performance of that condition. Thus, parol evidence may be admissible to show that, notwithstanding the existence of a written contract, it was the intention of the parties that the contract should not become operative except upon the happening of some future event. * * *
>
> In Minnesota we have repeatedly held that parol evidence is admissible to show that, notwithstanding the delivery of an instrument, the intention of the parties was that it should not become operative as a binding contract except upon the happening of a future contingent event. * * *
>
> * * * * * *
>
> Whether or not a certain oral agreement constituted a condition precedent for a subsequent contract is a factual determination to be decided by the trier of fact.

*Id.* at 575–76, 230 N.W.2d at 463–64; *see also Nord v. Herreid*, 305 N.W.2d 337, 339 (Minn.1981) (quoting *Craigmile v. Sorenson*, 239 Minn. 383, 394, 58 N.W.2d 865, 871 (1953)) ("a written document, unconditional on its face and fully executed, can be shown by parol testimony to have been subject to a condition precedent").

▆▆▆▆ Similarly, in this case even though the release indicated no condition and the letter stated that Palatine "has discharged Mr. Olson * * * from the fifth loan * * *," Glassgow's testimony was admissible parol evidence to show that the release was subject to the condition precedent of bringing the loans to a successful conclusion. It was for the jury to decide whether or not an oral agreement constituted a condition precedent for the release to become effective. Thus, parol evidence was properly considered by the jury on this issue and provides sufficient evidence to sustain the verdict.

## II

Two items of security were named on the Olson Planned Interiors note. One item, the receivable owed by High Site, is at issue. High Site introduced into evidence a form UCC–1, "Statement of Termination of Financing," covering High Site Apartments. On the face of the document appears the statement, "The Secured Party (Olson Planned Interiors) certifies that the Secured Party *no longer claims a security interest* under the financing statement bearing the file number shown" (emphasis added). The statement, which shows Palatine as assignee of the secured party, is signed by Palatine and dated July 9, 1976.

At the close of the evidence the trial court granted High Site's motion for a directed verdict that the document constitutes a release of its receivable. Upon Palatine's post-trial motion for amended findings, the trial court reversed itself and

gave Palatine judgment against High Site for the amount of the receivable. High Site claims this was error.

High Site also maintains that it was denied its right to trial by jury on the effect of the termination statement. Palatine disagrees, arguing that without any evidence that the underlying obligation was released, there was no fact issue for the jury.

■ The granting of a judgment notwithstanding the verdict is purely a question of law. *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 14 (Minn.1979). The trial court's entry of JNOV over its own directed verdict was not erroneous if it is clear as a matter of law that the High Site receivable was not released.

■ Neither the termination statement nor the statute governing it (Minn.Stat. § 336.9–404) provide that the statement constitutes satisfaction of a debt. It is clear as a matter of law that the termination statement released only the security interest. Because there is no evidence from which to conclude that the underlying obligation was also released, the trial court did not err by entering judgment against High Site for the amount of the receivable.

### III

Appellants argue that they are entitled to a new trial because the trial court erred in failing to instruct the jury on the legal meaning of the term "release." Appellants did not raise this objection until their motion for a new trial but argue the issue is properly before this court because the failure was an error with respect to fundamental and controlling principle. *See* Minn.R. Civ.P. 51; *Kallevig v. Holmgren*, 293 Minn. 193, 198 n. 6, 197 N.W.2d 714, 718 n. 6 (1972).

Appellants contend the term "release" has a specific meaning in the law, comprehension of which was crucial to the jury's decision-making process. Thus, the jury was forced to decide this case without proper instructions as to the fundamental law applicable to the case.

■ In determining which errors are fundamental or controlling, two questions should be resolved: (1) the importance of the error to the outcome of the litigation, and (2) the culpability of the party who fails to object. 2 J. Hetland & O. Adamson, *Minnesota Practice* 365–66 (1970). Generally, it is difficult to sustain a claim that an error is fundamental if the error is of a type that the objecting party should reasonably have been able to discern and raise before the jury retired. *Id.* at 366. In *Clifford v. Peterson*, 276 Minn. 142, 144–45, 149 N.W.2d 75, 77 (1967), the trial court failed to instruct that violation of a traffic statute is not negligence per se but only prima facie evidence of negligence. The supreme court held that although it was the duty of the trial court to read the statute and, further, to define "prima facie," and although it would have been error to refuse such instruction had it been requested, it did not, under the circumstances, constitute fundamental error.

■ Appellants vigorously argued the meaning of the term release in their closing statement. Thus, it is unlikely that a jury instruction on the definition would have changed the outcome. In addition, the trial court's proposed instructions were read to counsel before they were given. No objection was made. Appellants should have caught the omission because it was not difficult to notice. Under these circumstances, the failure to object was not excusable. We hold the failure to instruct the jury on the definition of release was not fundamental error.

### IV

Appellants argue that the loans which are the subject of this action were an extension of credit for an improper service under 12 U.S.C. § 1972, and the notes are thus illegal and unenforceable. *See, e.g., Seitz v. Michel*, 148 Minn. 474, 181 N.W. 106 (1921). The statute provides in pertinent part:

(1) A bank shall not in any manner extend credit * * *, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

 * * * * * *

(C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service.

The purpose of this provision of the Bank Holding Company Act "is to prohibit anti-competitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." *Swerdloff v. Miami National Bank,* 584 F.2d 54, 58 (5th Cir.1978).

Palatine did not require appellants to provide a service in order to obtain the loans. Indeed, there was evidence from which the jury could have found that Olson had his own purpose in buying the bank's position on the Edgar-Rintz note. The note arose in connection with the development of a shopping center which Olson was interested in purchasing. Ownership of the Edgar-Rintz note presumably put him in a favorable position to do so.

The question of whether the statute was violated was for the jury. *See Costner v. Blount National Bank of Maryville, Tennessee,* 578 F.2d 1192 (6th Cir.1978). The jury's finding that the statute was not violated is supported by the evidence.

## V

Appellants do not dispute that each of the notes contains a provision requiring the obligors to pay any legal costs incurred by Palatine in collecting payment. However, they do contest the trial court's entry of judgment against all appellants "jointly and severally" for the total amount of legal expenses claimed by Palatine for collection of all four notes.

Attorney's fees are not recoverable in litigation unless there is a specific contract or statute authorizing such recovery. *Barr/Nelson, Inc. v. Tonto's, Inc.,* 336 N.W.2d 46, 53 (Minn.1983). No Minnesota statute or authority authorizes joint and several liability for debtors having separate obligations on separate contracts. While the trial court's order was doubtless inspired by an equitable view of the matter (certainly Olson and the corporate debtors are interrelated), the record does not indicate that the court intended to pierce the corporate veil.

We vacate and remand this issue to the trial court to make a fair and efficient allocation of attorney's fees among the various parties. One possible allocation would be to divide the total fees in proportion to the size of each note. However, this observation is not meant to limit the trial court's discretion in allotment.

## DECISION

The jury's verdict that the loan transactions did not violate 12 U.S.C. § 1972 and that respondent did not release two appellants from their obligations on the Olson Properties note is supported by the evidence. The trial court did not err in entering judgment against High Site for the amount of its receivable or in failing to instruct the jury on the meaning of release. The trial court did err in ordering joint and several liability against all appellants for respondent's attorney's fees.

Affirmed in part, vacated in part, and remanded.