John A. CONROY, et al., Appellants,

v.

BOOK AUTOMATION, INC.,
Respondent.

No. C6–86–940.

Court of Appeals of Minnesota.

Jan. 6, 1987.

James J. Boyd, Paige J. Donnelly, Ltd., St. Paul, for appellants.

Charles N. Nauen, Opperman & Paquin, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

HUSPENI, Judge.

John and Janice Conroy, doing business as Conroy Enterprises, appeal denial of a motion for judgment notwithstanding the verdict or a new trial in a contract action. In response to special verdict questions, the jury found appellants breached a contract with Book Automation, Inc. The Conroys argue: (1) the trial court abused its discretion in limiting testimony of their former attorney; (2) errors of fundamental law and controlling principles contained in the jury instructions necessitate a new trial; (3) the special verdict does not disclose the basis for the jury's decision and a new trial is therefore required; and (4) the evidence is insufficient to support the verdict. We affirm.

## FACTS

The Conroys obtained a patent for a machine called a JAC, which automatically places dust cover jackets on books. In the process of marketing the machines, they came in contact with Book Automation, a firm marketing equipment to book binderies. In a letter dated September 14, 1982, Book Automation offered to guarantee a minimum purchase of six machines in 1982 and twelve machines in 1983, 1984 and 1985. The Conroys accepted the offer in a letter dated September 20, 1982. The acceptance outlined a schedule for delivery of the machines in lots of six each and also provided a payment schedule. The schedule called for six machines to be delivered as soon as possible for 1982 and further stipulated that one-third of the price was "due now with purchase order."

The first payment was not made until December 8, 1982, and manufacture of the machines began shortly after receipt of the payment and purchase order. The Conroys experienced difficulty in obtaining materials, and delivery was not made until April and May of 1983. They were paid in full for all six machines. Following receipt of the machines, the parties agreed to several modifications, and John Conroy traveled to the east coast to adjust and modify the machines which had been placed in book bindery plants. In October of 1983, all six machines were returned to the Conroys for further modifications. In January of 1984, three of the modified machines were returned directly to customers of Book Automation, and two were returned to Book Automation. The sixth machine was not returned.

Book Automation states the Conroys failed to return that machine when requested to do so. The Conroys contend they received no directions regarding shipment of the machine, and were waiting to do certain work on it until production began on a second lot of machines.

The Conroys contacted Book Automation on March 2, 1984, asking when orders for additional machines would be received. The payment schedule had called for a purchase order and one-third payment for the second lot of machines to be made in December of 1982, but the parties agreed to delay that portion of the contract until 1986. The schedule further called for delivery of lots of six machines each in September of 1983 and March of 1984, with one-third payments and purchase orders due three months before each delivery date. Neither order had been forwarded by Book Automation, who indicated during the March 2 discussion that the orders would not be placed.

The Conroys then contacted attorney John Martin, who was also their neighbor. Martin had two telephone conversations with Clifford Wall, president of Book Automation, regarding the contract. Martin indicated that during the course of the conversations, Wall proposed to buy machines

on an as-needed basis rather than according to the schedule. The attorney relayed this information to the Conroys, who rejected Book Automation's proposal. This action was then commenced, with the Conroys alleging breach of contract. Book Automation counter-sued, charging that the Conroys had breached the contract and an implied warranty.

Shortly before the trial date, Book Automation subpoenaed attorney Martin, who then voluntarily withdrew as counsel for the Conroys. The trial was rescheduled in part to permit the Conroys an opportunity to retain new counsel. Both Martin and Wall were subsequently deposed. At the trial, Book Automation did not subpoena Martin. However, the Conroys did attempt to call him as a witness to testify about his conversations with Wall. Book Automation objected that the conversations related to settlement and compromise discussions and were inadmissible under Minn.R.Evid. 408. After hearing arguments in chambers, the trial judge granted the motion and excluded all testimony concerning the two telephone conversations. The Conroys made an offer of proof, indicating that the testimony would be used to show that Book Automation had repudiated the contract.

At the conclusion of the trial, the jury returned a special verdict finding that there was a contract between the parties and that the Conroys had breached the contract. The jury further found that Book Automation suffered damages as a result of the breach in the amount of $3,700. This is an amount equal to the cost of one JAC, although the special verdict does not indicate that the damages were calculated on this basis. The jury also found the Conroys had supplied machines that were fit for the general purpose for which the goods were sold and that Book Automation had not breached the contract. The Conroys' motion for a judgment notwithstanding the verdict or for a new trial was denied.

## ISSUES

1. Did the trial court abuse its discretion in limiting testimony by the Conroys' former attorney?

2. Were the jury instructions so prejudicial that the trial court erred in denying the motion for a new trial?

3. Did the trial court err in denying the motion for a new trial because the form of the special verdict does not allow a determination of the basis for the verdict?

4. Is the evidence sufficient to sustain the verdict?

## ANALYSIS

### I.

In certain instances, a party's attorney may be called to testify regarding contact with the opposing party. *See Precision Service Co. v. Schill*, 60 Wis.2d 346, 210 N.W.2d 706 (1973). The trial court's exclusion of testimony by the Conroys' former attorney regarding conversations with Wall was based on Minn.R.Evid. 408, which provides:

> Evidence of * * * attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. * * *

Generally, evidentiary rulings are within the sound discretion of the trial judge. *McGuire v. C & L Restaurant, Inc.*, 346 N.W.2d 605, 615 (Minn.1984). As a result, the trial court's exclusion of the testimony will be reversed only if there has been an abuse of discretion.

The Conroys attempted to use testimony regarding attorney Martin's conversations with Wall to show that they had requested performance of the contract but that Book Automation refused, thereby repudiating the contract. When the court excluded the testimony as evidence of settlement negotiations, the Conroys made an offer of proof. After reviewing the offer of proof and portions of Martin's deposition, we conclude that the trial court properly refused to admit the testimony.

The first conversation between Martin and Wall was brief and concerned only the issue of the existence of a contract. It did not relate to repudiation. The second conversation was more extensive. Martin recorded notes during that discussion and referred to the notes in his deposition. He said that he had formed a belief that Book Automation had breached the contract before talking to Wall and that he told Wall of a proposal to mitigate damages of both parties. The deposition continues:

Q. And am I to understand that 1 through 3 contained in [the notes of the conversation] was your suggestion or proposed resolution for the problem with the breach?

A. Yes, I had discussed this with the Conroys.

Q. Is proposal a word that you can accept?

A. I think that a proposal is a fair and accurate statement.

Q. Okay. And just to make sure I understand, you communicated this proposal contained in 1 through 3 during your second conversation with Mr. Wall, correct?

A. Yes.

Q. And Mr. Wall rejected this proposal?

A. Yes.

Q. And Mr. Wall proposed what is reflected in your handwritten notes beginning "Proposal," that is also contained in this exhibit, right?

A. I am not sure that that is a chronological order, but yes.

The deposition clearly indicates Martin acted on directions from the Conroys to discuss proposals with Wall to mitigate damages. The entire conversation therefore relates to settlement negotiations and cannot be separated into a portion identified as settlement and another segment labeled repudiation by Book Automation. The trial court did not abuse its discretion in excluding all testimony relating to the conversations between Martin and Wall.

■ The Conroys also argue that Book Automation is estopped from objecting to the admission of the testimony because it originally subpoenaed Martin. The trial was postponed, and Martin voluntarily stepped aside as counsel for the Conroys. At the rescheduled trial, Book Automation did not include Martin on its witness list. The Conroys contend that the subpoena represents an abuse of process by depriving them of their original counsel. While we agree that there is a potential for abuse when opposing counsel is subpoenaed, we also note that in this instance Book Automation sought information reasonably necessary for trial preparation from the only source of that information. After deposing Martin, it became apparent that the testimony would not be admissible. Martin's action to terminate representation of the Conroys was a voluntary decision and was not mandated by service of the subpoena. Under these circumstances, we can find neither an abuse of process nor an estoppel preventing Book Automation from raising a valid objection to the proposed testimony.

## II.

■ The Conroys contend that the jury was wrongly, prejudicially and incompletely instructed in the law applicable to their claims. At issue is the following portion of the instructions:

A failure without legal justification to perform all or any substantial part of what is promised in a contract is a breach of that contract. A breach of contract is a nonperformance of any contractual duty of immediate performance. A breach may occur by a failure to perform the acts promised in the contract, by preventing or hindering the performance of the promised acts, or by repudiating or denying the contract.

A seller's failure to adequately fulfill and complete delivery—completely deliver an installment justifies a purchaser's refusal to pay for subsequent installments. A breach of a contract by one party excuses performance by the other.

The instruction relating to general breach of contract was taken from the Minnesota Jury Instruction Guides III and was

submitted by both parties and read by the court without objection. Book Automation did suggest the instruction on breach by a seller, which was given without objection. The Conroys now offer a lengthy list of instructions relating to the Uniform Commercial Code (UCC) that they contend should have been given, including such things as a definition of an installment contract, repudiation of a contract, and breach of a contract by a buyer.

A fundamental error of law in the jury instructions may be reviewed even if it is belatedly raised in post-trial motions. *Kallevig v. Holmgren*, 293 Minn. 193, 198 n. 6, 197 N.W.2d 714, 718 n. 6 (1972). However, if an attorney states that the instructions are satisfactory, a new trial will not be granted based on technical defects unless justice was entirely miscarried and some reasonable excuse can be offered for failing to call attention to the defect before the jury retired. *Fenske v. Unterman*, 181 Minn. 275, 276, 232 N.W. 326, 327 (1930). Even though erroneous, an instruction may not be so prejudicial to warrant a new trial. *Kallevig*, 293 Minn. at 198, 197 N.W.2d at 718.

By offering the instructions used by the court and by failing to object to the scope of the entire instructions, the Conroys effectively agreed with the instructions. Although some of the instructions relating to the UCC now suggested by the Conroys may have been helpful, the instructions that were given did define breach of contract and other points necessary to assist the jury. After reviewing all of the instructions, we must conclude that they were adequate to allow the jury to decide the matter and did not misstate the law.

We note that the court did give the instruction proposed by Book Automation relating to breach by a seller. A party is entitled to instructions setting forth its theory of a case if there is evidence to support it and if it is in accord with applicable law. *Poppenhagen v. Sornsin Construction Co.*, 300 Minn. 73, 81, 220 N.W.2d 281, 286 (1974). The instruction was appropriate. While it may have been helpful to balance

this instruction with one relating to breach by a buyer, the Conroys did not propose such an instruction. In view of the general definition of breach of contract, we cannot conclude that the omission indicates that the instructions as a whole were prejudicially erroneous.

## III.

■ The jury returned a special verdict indicating that the Conroys had breached the contract but that Book Automation had not. The Conroys charge that the questions relating to breach are so broad that the reviewing court cannot determine upon what theory the jury found them to have breached the contract.

The purpose of a special verdict is to furnish the basis for the judgment. *Roske v. Ilykanyics*, 232 Minn. 383, 392, 45 N.W.2d 769, 775 (1951). The verdict will be overturned only if no reasonable mind could find as did the jury. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn. 1984). The evidence and inferences must be viewed in the light most favorable to the jury. *Bergemann v. Mutual Service Insurance Co.*, 270 N.W.2d 107, 109 (Minn. 1978). A new trial should be granted where it cannot be determined whether the jury's verdict was based upon a valid or invalid legal theory. *Raymond v. Baehr*, 282 Minn. 102, 109, 163 N.W.2d 54, 58 (1968).

In this instance, both parties allege that the opposing party breached the contract. Both parties presented evidence supporting their allegations, and the jury found Book Automation's evidence most convincing. The situation does not require this court to determine whether the verdict is based upon a valid or invalid legal theory. Rather, review focuses on evidence and inferences drawn by the jury. The special verdict form is sufficient to allow review by this court on that basis.

## IV.

■ The Conroys state that a new trial should be ordered because the verdict is not justified by the evidence. They list

several breaches of the contract by Book Automation that they argued at trial had occurred. However, in finding that the Conroys had breached the contract, the jury apparently rejected evidence relating to alleged breaches by Book Automation. The sufficiency of evidence analysis must therefore relate to the sufficiency of evidence that the Conroys had breached the contract since that is the basis of the verdict.

Although the special verdict does not expressly indicate the basis for the conclusion that the Conroys had breached the contract, it appears that the conclusion is based upon the non-delivery of a machine after the six JACs had been returned to the Conroys for modification.

Book Automation's testimony indicates that return of the machine had been requested. While there is contradictory testimony from John Conroy that he had received no information or directions regarding delivery of this machine, the jury did not accept this testimony. The reviewing court may not weigh the evidence or judge the credibility of witnesses in determining if there is any competent evidence on record to reasonably sustain the jury's verdict. *Melin v. Johnson,* 387 N.W.2d 230, 232 (Minn.Ct.App.), *pet. for rev. denied,* (Minn. July 31, 1986). The evidence must be considered in the light most favorable to the prevailing party, and the verdict must be sustained if it is possible to do so on any reasonable theory of evidence. *Carpenter v. Mattison,* 300 Minn. 273, 276, 219 N.W.2d 625, 628–29 (1974). Considering the evidence in the light most favorable to Book Automation, it would seem that there is sufficient support for the conclusion that failure to return the sixth machine constituted a breach of the contract.

## DECISION

The trial court did not abuse its discretion in excluding all testimony relating to telephone conversations between attorney Martin and Wall. The jury instructions were not prejudicial, and the verdict form allows review of the basis of the decision.

There is sufficient evidence to support the verdict.

Affirmed.